## THE WESTERN UNION TELEGRAPH COMPANY *vs.* FATMAN.

73  285
92  623
93  355

73  285
105  278

73  285
f112  688

73  285
123  224

73  285
e124  480

1. Where a telegraphic message was sent by cable, and suit was brought for damages resulting from a failure to deliver it, after its receipt at its point of destination, within a reasonable time, the *copy message written by the telegraph operator at the point of destination* and eventually delivered was admissible in evidence, without producing the original message written out at the point of transmission, there being no claim that the message delivered differed from that sent.

2. Where a ship broker, whose office was near that of a telegraph company, had sent other messages by cable through such company, and a cipher message from a company in Liverpool was sent to him, there was enough to put the telegraph company on notice that it was a matter of important commercial business, and required reasonable and ordinary dispatch in delivery; and the party injured by a failure to use such dispatch would not be limited to recovering nominal damages.

(a.) Telegraph companies and common carriers are not identical as regards notice, or notice of value of the dispatch.

(b.) If a telegraph company receives a cipher dispatch, and undertakes to carry it and deliver it to the person to whom directed, in consideration of money paid to them, it is their duty to make such delivery within a reasonable time.

3. If a message sent by cable was received at the office of the telegraph company at the point of destination at 10:24 A. M., and was

not delivered until 11:55 A. M., the office of the person to whom it was directed being within five minutes' walk from that of the company, and, in the meantime, loss occurred by reason of this failure to deliver, there was enough to warrant the jury in finding that the delay was unreasonable.

4. Where, by reason of the failure on the part of a telegraph company to deliver a message directed to a ship broker, be lost a contract, by which he would have made certain commissions had the message been promptly delivered, a recovery of the amount of such commissions was not too remote or speculative a measure of damages.

January 6, 1885.

Telegraph Companies. Damages. Notice. Contracts. Before Judge HARDEN. City Court of Savannah. February Term, 1884.

Fatman brought suit against the Western Union Telegraph Company for $499.50, alleging, in brief, as follows: He was a commission merchant, and desired to furnish a vessel to carry cotton to Barcelona, and for that purpose communicated with W. H. Scott & Company, his agents in Liverpool, so as to get the vessel and furnish it on commission. They sent to him, in reply, the following cipher dispatch:

                                    "10 L'pool, rollona
                              " 1    12    1882
"To Witwal                          "10    24 a
     "Sav'h.

"Casting Troubadour, Monopastos, Iconology, Barcelona thickly, Sautern Rollona."

The meaning of this was:

"Offer your firm, subject to immediate reply by wire, 'Troubadour,' capacity about 1,000 tons, net register, 31-64d. Barcelona, 5 per cent commissions on charter, 16 working days, last half February loading."

Had this been delivered with reasonable speed by defendant after its reception in Savannah, plaintiff could have furnished the Troubadour to the person desiring it, and made his commissions thereon; but its delivery was negligently delayed, and plaintiff was damaged.

Defendant pleaded the general issue, and that the message was in cipher and did not put defendant on notice of its value, and that the damages claimed were not in contemplation of the parties when the contract was made.

*Nisbet*, a witness for the plaintiff, testified as follows:

I am a cotton merchant in Savannah; engaged in the business fifteen years; in January, 1883, I informed Fatman I could use a steamer of 1,000 tons to load in Savannah for Barcelona in February or March, and after his telling me that he had reason to think he could get such a vessel, I made him an offer for it; he was given until 11 o'clock, January 12th, to accept, and ten minutes more were given by special request; the offer was verbal; when this offer was made to Fatman, I was offered by Minis a steamer answering my requirements, although larger; but as Fatman had gone to some expense in telegraphing, I wanted to give him an opportunity to secure the business; I told Minis that his steamer would be taken if Fatman did not answer by 11:10; received no answer from Fatman at time stipulated, and closed with Minis; about an hour and a half later, Fatman offered the steamer, which was declined. The contract was oral, and was a mere offer; I was under contract up to a certain time; Fatman was not.

There was also other evidence showing that the telegram was received at defendant's office at twenty-four minutes after ten o'clock A. M.; that the telegraph office was four and a half minutes' walk from Fatman's office; that the message was delivered at 11:55 A. M., and was an answer to a previous telegram, plaintiff having been in telegraphic correspondence about the matter for about eight days; that "Witwal" was the registered address of Fatman at defendant's office; that the commissions which he would have made, if he had secured the vessel for Nisbet, would have amounted to $499.50, but his only actual expenditure was for the transmission of messages. The delivery was during ordinary business and banking hours.

The jury found for plaintiff $499 50.   Defendant moved for a new trial, on the following among other grounds :

(1.) Because the court admitted in evidence before the jury a certain paper addressed to " Witwal," purporting to be the telegram received by the plaintiff (the alleged delay in the delivery of which is complained of), over the objection of defendant's counsel, that the same was a copy, and that no proof was introduced or offered that the said telegram was the identical telegram which the plaintiff charged in his declaration was delivered by his agents in Liverpool to the defendant for transmission.

(2.) Because the court permitted the witness, Schroder, over the objection of defendant's counsel, to translate the said paper (which was in cipher) to the jury.

(3.) Because the court overruled the defendant's motion for a non-suit, which motion was on the following grounds:

(*a.*) That it appeared from the evidence that the telegram, the delay in the delivery of which is complained of, was in cipher, obscure and unintelligible, and that no notice of its contents or value had been given to the defendant, and therefore the plaintiff was not entitled to recover in this action more than nominal damages, to-wit: the tolls paid for transmission, which had already been tendered and refused.

[On the message blanks of defendant were printed the following conditions :

"To guard against mistakes on the lines of this company, the sender of every message should order it repeated, that is, telegraphed back from the terminus of said lines to the original place.   For such repeating, the sender will be charged, in addition, one-half the usual tolls of this company on that portion of its lines over which such message passes.

"This company will not assume any responsibility in respect to any message beyond the terminus of its own lines; and it is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in transmission or delivery, or for non-delivery to the next connecting telegraph company, of any unrepeated message, beyond the amount of that portion of the charge which may or shall accrue to this company out of

the amount received from the sender for this and the other companies, by whose lines such message may pass to reach its destination; and that this company shall not be liable for mistakes in the transmission or delivery, or for non-delivery, to the next connecting telegraph company, of any repeated message, beyond fifty times the extra sum received by this company from the sender for repeating such message over its own lines, nor for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company to reach its destination.

"This company is not to be liable for damages in any case where the claim is not presented in writing within thirty days after the sending of the message."]

(*b.*) That the evidence failed to show any valid and binding contract between the plaintiff and his alleged correspondent in Liverpool, by which they authorized him to accept the offer of John Nisbet to charter the vessel, "Troubadour," and that without the proof of such a valid and binding contract, there could be no legal damages resulting to the plaintiff by reason of a delay in the delivery of said telegram.

(4.) Because the court refused to charge as follows: "If you find that the telegram, in this case, the negligent delivery of which is complained of, was in cipher, and did not indicate that either the sender or the receiver was liable to sustain loss if the dispatch was not promptly delivered to the plaintiff, in such case defendant is liable only for nominal damages, to-wit: the price of the tolls tendered."

(5.) Because the court refused to charge as follows: "If you find from the evidence that the said telegram was not delivered in proper time by reason of the gross negligence of the defendant, but further find that said telegram was in cipher and its meaning not communicated to defendant, the plaintiff can, in this action, only recover nominal damages."

(6.) Because the court refused to charge as follows: "If you find that in this case the defendant used ordinary care and diligence in the delivery of said telegram, that the

same was delivered in business hours, and that the plaintiff had not made known to the defendant the fact that he desired to receive said telegram before a specified hour in the day, then the plaintiff cannot recover, even though it should appear from the evidence that the plaintiff might have realized a profit from a secret contract which he had with John Nisbet, if said telegram had been delivered a few moments previous to the hour agreed upon between the plaintiff and the said Nisbet."

(7.) Because the court charged as follows: " But when the company receives a telegram, knowing it is in cipher, and not understanding it, the contract is that they will deliver that dispatch with reasonable care, promptness and diligence. Now, then, under the laws of this state, if they violate that contract, they are responsible for the pecuniary damages suffered, which follow as the natural legitimate result of their violation of the contract; and that brings us down to the consideration of the facts in the case: I charge you, therefore, that, if you find that there was a telegram received here by this company—this telegraph company—to be by them delivered to S. Fatman, and that it was not delivered in a reasonable time, and that they could have delivered it in a reasonable time, then that company is liable for such damages as Mr. Fatman suffered for such failure of the company to deliver the message."

(8.) Because the court charged as follows: " On the other hand, if you find that they received a dispatch for him, and that they delivered that dispatch in the regular course of their business, and that there was no unreasonable delay, then he would not be entitled to recover, the effect of a cipher message being that they were without notice that there should be any unusual haste in the delivery of it, thus putting it upon the same basis as if it had been an ordinary telegram about a matter about which they knew nothing; that is to say, did they or did they not exercise proper care or diligence, as a telegraph company, in

undertaking to communicate with a distant party; if they did use that ordinary care and diligence, and if the delay, if there was any delay, was proper and reasonable, then they are not liable; if they did not use that reasonable care, and if there was a delay which was unreasonable, then, under those circumstances, they are liable, and the measure of damages will be such damages as has been shown to you are the natural, legitimate and proper result of their negligence."

The motion was overruled, and defendant excepted.

CHARLTON & MACKALL, for plaintiff in error, cited Scott & Jarnagan, §§348, 363, 393 *et seq.;* 68 *Ga.*, 297, 300; 29 Md., 232; 9 Exchequer, 341; Cent. L. J., May 30, 1884, p. 428; 1 L. R. (C. P. D.), 326 (17 Eng. (Moake), 286); 1 A. L. T. N. S., 407; 8 Bissell, 131; 34 Wis., 471; 45 N. Y., 744; 21 Minn., 155; 16 Nev., 222; 9 Brad. (Ill.), 587; Chic. L. News., Feb. 2, 1878, p. 157; 46 Am. R., 715; Allen's Tel. Cas., 653 (note); 58 *Ga.*, 438; L. R., 1 P. C., 385; 4 B. & S., 66.

GARRARD & MELDRIM, for defendant, cited, Allen's Tel. Cas., 7, 288, 114, 165, 120, 273, 454, 390; Shear. & Redf. Neg., §§560, 564; Alb. L. Jour., Nov. 22, 1884, p. 410.

JACKSON, Chief Justice.

This is an action brought by a ship broker in Savannah against the Western Union Telegraph Company for unreasonable delay in delivering a cablegram, whereby the broker was damaged the loss of his commissions from a contractor to take his ship, the time given the broker having expired and his customer having taken another ship by reason of the delay of the company in delivering the cablegram. No question is made on any error in the transmission to Savannah or delay in reaching that city; but delay in the failure to deliver to the broker after it reached Savannah, is the ground for recovery and the issue in the case.

The jury found for the broker the commissions he lost by non-delivery of the dispatch in time, and a motion for a new trial denied below makes the questions for review here.

1. The able counsel for plaintiff in error groups his grounds for new trial under four heads, and his analysis makes as convenient and succinct a mode of considering the questions of law as we can well devise. The first is objection to the admission of the copy telegram received from the company in Savannah as written out by itself, and failure to produce the original message delivered at Liverpool. The copy was clearly admissible. No point is made on its not being the exact message which started from Liverpool to the Savannah broker, nor is it at all his complaint that that thing started in Liverpool was altered or not transmitted right in every respect until it got to Savannah; but the issue made is that the agents of the Western Union Company at Savannah did not deliver the copy, which it was their duty to write out and deliver, from their office to the defendant's office in time. When it delivered that copy, it cannot well deny that it is a *fac simile* of the original, as received by it, and which itself wrote out, but delivered too late.

2. The next point insisted upon is that there can be no recovery on a cipher telegram, except nominal damages, unless the company be advised of its value, and the counsel has pressed this point with power and cited many authorities from England and our own state courts bearing thereon.

In the view we take of the question, it becomes unnecessary to examine closely these numerous cases, which are somewhat variant in shades of opinion and diverse in conclusions reached, because we think that the case of *The Western Union Telegraph Co. vs. Blanchard, Williams & Co.*, 68th *Ga.*, 299, gives the views of this court on the point so fully in principle as to settle it in this state. There a telegram was in these words: " Cover two hun-

dred September and one hundred August." One defence being that the telegram was in cipher, evidence was admitted to decipher or explain it, and not nominal, but the real damages, naturally flowing from the company's failure in duty, were recoverable. True those words are not pure cipher, but they are wholly unintelligible, every whit as much so as the words here; yet this court held that there was enough in them to show that the message was commercial and of value. Cablegrams had crossed the ocean for days by the broker in the case at bar; he was neighbor to the agents at Savannah, his office within five minutes' walk of theirs, the fact that this was a communication between a ship broker and a company in Liverpool, and couched in language so singular and unintelligible to the common reader, all taken together, make a case as strong as that cited from 68th *Ga.*, to put the company on notice that this was important commercial business and required reasonable and ordinary dispatch.

Besides, whether valuable or not, it is the contract to deliver the message in a reasonable time, and the judge of the city court, at once learned and cautious, charged the jury only to that effect, and put the issue of delivering in a reasonable time fairly and clearly before that body. Whilst the duties of the telegraph company are similar to those of ordinary common carriers, and so much so as to make it proper to call them, and in many respects treat them, as *quasi* common carriers, yet as their charges are based on number of words, and not on weight as carriers of ordinary freight, or on value, as express companies, the rule of liability should not be the same, as respects notice or no notice, of the value of the dispatch. That word " dispatch " is the very core of the body of such a company, whether it be called carrier or bailee, or any other name. People write messages by them, and not by the slower mails, because they are in need of haste. Business, or family necessity, sickness or death, make dispatch, in this mode of conveyance, the very consideration on which they use it, on which

they pay higher rates for it, for which the privileges are granted to them by the public, and surely the messages so sent, when received, must be delivered with reasonable dispatch in all cases, and if not, the damages sustained by failure must be paid. The thing they undertake for money to carry must be carried to the place of destination, and that is to the office or house where due, for nobody goes, or is required to go, to their office for answer, but it is their duty to send it to him.

Besides, if a cipher, or unintelligible communication, might be rejected by them, or put on terms by special contract, and if, in this sense, they may not be common carriers of everything, yet, when they undertake to carry it, and receive message and money in consideration of the one to deliver the other, ought it not to be done? Of course it ought. When? Of course, within a reasonable time. Where? Just where the man, who pays for the delivery, expects to get it, and where they agreed to deliver it, and showed, in this case, that they did so agree by delivering it at the broker's office, though too late.

3. It is insisted that the verdict is wrong on the question of a reasonable time. The telegram or cablegram was received by the company at 10:24 A. M., and delivered at 11:55 A. M., one hour and thirty-two minutes after its reception. Five minutes' walk could have delivered it. If delivered at 11:10 A. M., it would have been in time to save plaintiff's contract. Was the time unreasonable? The court left it to the jury on a fair charge; they held that it was; there was confusion in the testimony about the messenger boy; there was evidence enough to authorize the finding; it satisfied the presiding judge; we should violate our rule if we interfered on this point.

4. The damages are said to be too remote and speculative. Not so. They were precisely what the plaintiff would have made by his contract with Nisbet, if the cablegram had reached him at 11:10 A. M. That was a reasonable time within which it should have reached him;

the jury and the judge say so; it strikes us the same way; at all events, we cannot, without departing from well settled rules of practice in this court, interfere with their decision, unless the case showed an abuse of discretion and violation of justice, which we do not see here. Hence the verdict must stand, and the judgment be affirmed.

Judgment affirmed.