C. H. ALEXANDER ET AL. *v.* WESTERN UNION TELEGRAPH CO.

1. CONTRACT OF SALE. *Both offer and acceptance essential.*

Both an offer to sell and an acceptance are essential to constitute a contract of sale. In answer to a letter from a real estate agent, stating that he had "hit on" a desirable piece of property, which could be bought on certain terms, and advising a response by wire if the purchase was desired, a telegram to the agent, though in the form of an absolute acceptance, does not close a contract, the letter being merely one of advice and not an offer to sell.

2. TELEGRAPH COMPANY. *Negligence. Loss of bargain. Prior message.*

A telegraph company is liable in damages for the loss of a bargain caused by its negligent delay in transmitting a message ordering the purchase of property; and it is no defense that another person, at a different office, had previously delivered to the company, for transmission to the same sendee, a similar message, which was also unseasonably delayed, but which was finally delivered first, thereby securing the purchase to such other. Though the sender of the first message would have secured the bargain if both had been sent in due time, yet, as they were not so sent, plaintiffs are entitled to recover, if by prompt transmission their message would have secured the property.

FROM the circuit court of Oktibbeha county.

HON. LOCK E. HOUSTON, Judge.

This case was before this court on appeal from a judgment sustaining a demurrer to the declaration, where it was held that the declaration showed a good cause of action and the case was remanded for a new trial. See 66 Miss. 161.

C. H. Alexander, one of the plaintiffs, had been in correspondence with Neil W. Carothers, an attorney-at-law and real estate agent of Chattanooga, Tenn., relative to the purchase of real estate in that city. On December 3, 1886, Carothers wrote Alexander from Chattanooga, as follows —

"DEAR ALEX.: Following up the inquiry contained in your letter of a few day ago, I have this morning hit upon a piece of property which covers your case exactly. It is a lot on Market street (the principal street in the city), 48 feet front, running back to Broad (a parallel street) 236 feet. It has a frame house on it, which pays a rent now, I am told by the agent in charge, of $30 a

month.   Of course, it is not considered valuable for the improve-
ments, which are regarded as of temporary character.   This pro-
perty can be bought at $3000 ; $700 in cash, $500 in six months,
$500 in twelve months, $500 in eighteen months, and balance,
$800, in twenty-four months, with six per cent. interest on deferred
payments.   You perceive that $3000 for 48 feet is $62.50 a front
foot.   Say the property will pay $300 a year ; that is good interest
on the investment, if it were all cash ; and the outcome of the
property, in my judgment, is very great.   Five times the amount
could not buy the same amount of ground four blocks away on the
the same street, where it is, of course, better improved.   A party
will be here Monday to whom I will be under obligations to refer
this property.   So if you want to secure a bargain, and are willing
to make a venture on my say so, you had better telegraph.   There
is nothing on the market now that will compare with it as an
investment."

In accordance with the suggestion contained in this letter, Alex-
ander, on behalf of himself and W. M. Rogers, at one o'clock
P.M. Monday, December 6, 1886, delivered to the agent and ope-
rator of the Western Union Telegraph Company, at Starkville,
Miss., addressed to Neil W. Carothers, Chattanooga, Tenn., the
following message : " Yours of 3d received.   Get option till Mon-
day if can ; if not close trade and fix papers."   He paid the
operator eighty cents, the price charged for sending the telegram,
and at the time explained to him the importance of prompt trans-
mission and delivery.

This message was not delivered to him until seven or eight o'clock
on the evening of the next day.   Meantime the lot in question was
sold to W. H. Sims.   Plaintiffs sued the company for the alleged
negligent delay in the transmission and delivery of the message,
resulting in the loss of the bargain.   It was alleged that the pro-
perty, which was offered at $3000, was worth $5000, and therefore
plaintiffs demanded the difference, $2000, less $50, the cost of the
transfer, which plaintiffs would have paid if they had secured
the property.

After the judgment was reversed on the former appeal and the

cause remanded, the defendant filed, among others, the following plea :—

4. " And for further plea in this behalf as to all the damage claimed, except the sum of eighty cents and interest since December 6, 1886, defendant by its attorneys says : That at the time of the writing of the letter of Neil W. Carothers to plaintiff, described in the amended declaration, dated December 3, 1886, the said Neil W. Carothers wrote and mailed another letter of the same tenor and effect to one W. H. Sims, of Columbus, Miss., making therein to the said W. H. Sims the same proposition with reference to the sale of the lot in the declaration mentioned as those contained in the letter of Carothers to plaintiff aforesaid ; and the defendant avers that the said W. H. Sims duly received said letter, and that in response thereto prepaid and delivered to the agent of defendant, at Columbus, Miss., before the hour of twelve o'clock noon, December, 6, 1886, a telegraphic dispatch to be forwarded to the said Neil W. Carothers, at Chattanooga, directing him absolutely and unconditionally to purchase the lot in the declaration mentioned for him, the said William H. Sims, at and for the sum of $3000, which said dispatch was delivered before the hour of twelve o'clock noon, on December 6, 1886, to the agent and operator of defendant, at Columbus, Miss., and was by him immediately thereupon transmitted over the lines of defendant according to its direction and destination ; and defendant further avers that the said dispatch was delivered to and received by the said Neil W. Carothers, in the regular course of defendant's business, and the same would have been received before the dispatch of the said plaintiff, to the said Neil W. Carothers, and the lands in the declaration mentioned sold to W. H. Sims, even though the dispatch in the declaration mentioned had been transmitted by defendant in due course ; and so defendant says the plaintiff has not been injured by the defendant's negligence in not transmitting said telegram, except as to the sum of eighty cents and interest as aforesaid, and this the defendant is ready to verify."

Plaintiffs' demurrer to this plea was overruled, and after issue joined, the cause was tried before a jury on this plea and the general

issue.  On the trial the above facts were shown, the material allegations of the declaration being established.  In the absence of Sims and Thompson, witnesses for defendants, by whom it was proposed to prove the facts alleged in the 4th plea as to the Sims message, it was admitted that if present they would testify, that the letter was written by Carothers to Sims, and that Sims delivered the telegram, as alleged in the plea, to the operator of defendant at Columbus, Miss., at 12 o'clock, noon, on Monday, December 6, 1886 ; that it was immediately transmitted over the wires ; that this was before the message of plaintiffs was delivered at Starkville, and that if both messages had been transmitted and delivered with equal promptness, that sent by Sims would have been first received by Carothers.  The Sims message was also unseasonably delayed, but was delivered to Carothers at his residence in Chattanooga about 8 o'clock P.M. on the day it was sent, and he at once closed the trade for Sims with Kessler, the owner, for the purchase of the lot at $3000, the deed being executed a few days afterwards.  Plaintiffs' message was delayed over thirty hours—a longer period than required to communicate by mail—whereas, the proof showed that the message should have been transmitted and delivered within one hour, and that, if it had been promptly sent, it would have been delivered to Carothers before he received the Sims message.  It was further shown that plaintiffs could and would have consummated the purchase if their message had been promptly sent, and that the actual cash value of the property far exceeded $3000, the price at which they would have bought it.  Plaintiffs applied to Sims to purchase the lot as soon as they were advised that he had bought it, and he offered to sell it to them for $5000, if the trade was accepted at once.  Since then the value of the lot has gone considerably above that sum.  The defendant showed no reason or excuse for delay in sending either message.  Carothers was a lawyer and real estate agent, well known in Chattanooga, and had an office with a business sign within three blocks of the telegraph office, and was at his office during business hours on December 6th and 7th.  When plaintiffs' message was sent, they had no knowledge or notice of the Sims message.  Nor

were they informed of any reason for a failure of the company to promptly transmit their message. There was at Starkville another telegraph line by which they could have sent the message.

Plaintiffs' instructions were refused, and at the instance of defendant, the jury was instructed to find for plaintiffs only eighty cents, the price paid for sending the message, with interest. Judgment was entered accordingly, and plaintiffs were taxed with costs. Motion for new trial overruled, and plaintiffs appeal.

The case was disposed of below on the issue raised by defendant's fourth plea, the court holding that the facts therein alleged and proved constituted a good defense. The opinion of the court contains a further statement of the case.

*Brame & Alexander*, for appellants.

1. The merits of this case were settled on the former appeal. The court then held the declaration good. Now the question is as to the sufficiency of the evidence to establish plaintiffs' allegations. The court before held that they were entitled to recover if they could show that they *would have secured a profitable bargain had their telegram been promptly transmitted.* There is no conflict of evidence as to what would have happened. The evidence fully sustains the fourth count, which we mainly rely on.

2. The contract to send the Sims message has no place in this suit. The company did not contract with Sims and the plaintiffs to get the lot for both. It contracted to *send our message*, and was bound to do so promptly. Gray's Com. by Tel., §§ 32, 202. If it could not send the message because somewhere else in the United States a message to the same address was being negligently withheld, plaintiffs should have been informed of this in order that they might have used the wires of the I. C. R. R. Co. Ib., §§ 37, 43. The proof shows that the Sims message was delayed, and that *if the defendant had complied with its contract with plaintiff*, they would have secured the property. Having failed to do this, it is liable for the loss ; and it is no defense for the company to say that, *if it* had performed some other duty, to another person, plaintiffs would be entitled to nothing.

3. Defendant does not pretend to offer an excuse for the negligence in sending either message. It does not appear that the messages went over the same lines anywhere. Nor did the company know that they related to the same purchase. But it is not for a telegraph company to observe priorities or to adjust equities in delivering messages from different places.

4. As to plaintiffs' right to recover and the measure of damages, we refer to the opinion of this court on the former appeal. 66 Miss. 161; also 1 Sutherland on Dam., 128, 130, 174; *V. & M. R. R. Co.* v. *Ragsdale,* 46 Miss. 483.

*Muldrow & Nash,* on the same side.

1. Repaying the price of the message is not responding in damages, but is an effort to restore the *status quo* after breach of the contract. *Tel. Co.* v. *Cooper* (Miss. MSS. op.); *True* v. *Tel. Co.,* 60 Me. 9.

2. There is no claim by defendant that the proper handling of the Sims' message caused the delay of plaintiffs. We concede that where there is a sudden accumulation of messages at any office, this may excuse necessary delay. The law of the mill applies, and messages must be sent in the order of their receipt; but this rule only applies between messages at the same office. As a corporation the Western Union Telegraph Co. may be a unit, but not so in its practical operations. It contracts at every office with reference to the power to send the message at that office and at that time. Otherwise a message in New York, directed to one at Chicago, might legally be delayed because a prior message at San Francisco, directed to the same person, was being delayed, perhaps through negligence. If plaintiffs' message at Starkville could be held up because Sims' at Columbus was one hour ahead of it, then it could have been held if Sims' were a day, or a week ahead. If plaintiffs' message could legally be held to await an eight hours' delay of Sims', then it could be made to await a delay of eight months. A *negligent* delay of a message cannot be excused upon the plea that it was sent in its proper order. *Tel. Co.* v. *Ward,* 23 Ind. 377; *Tel. Co.* v. *Broesche,* 62 Tex. 654. If the company strictly per-

forms its contract, it cannot be hurt. *Tel. Co.* v. *Reynolds,* 77 Va. 173. The company cannot plead that the sender ought to have sent the message sooner. 14 Ill. App. 531. Nor that it had failed to provide sufficient force or means to handle the messages. Gray's Com. by Tel., 36.

3. The delivery of Sims' message to the operator at Columbus *did not conclude a binding contract in his favor for the purchase of the lot.* Carothers' letter was not an offer, but a mere recommendation. The condition as to time, place, and manner of acceptance is to be determined from the terms of the proposal. Pollock on Con., 10; *Lewis* v. *Browning,* 130 Mass. 173. Where the proposal by mail mentions that others are offering to buy, and that the answer must be made known by a certain day, receipt of the answer is essential to a contract. *Carr* v. *Duval,* 14 Peters, 82. It is true the declaration in three counts alleges the letter to be an offer, but the fourth count declares on it as a suggestion, and the answer as an instruction; not an acceptance.

4. It is idle to talk of plaintiffs being only entitled to the value of a *chance.* Our rights depend on *contract,* not chance. The company *contracted* to send the message, not to attempt to do so. Gray's Com. by Tel., 98.

*Sykes & Richardson,* for appellee.

1. The contract for the sale of the land to Sims was complete when he delivered his telegram to the agent of the company, accepting the offer made in the letter of Carothers. *Adams* v. *Linsdell,* 1 Barn. & Ald. 680; *Adams* v. *Frith,* 6 Wend. 103; *Trevor* v. *Wood,* 36 N. Y. 307; s. c. 93 Am. Dec., 514; *Curtis* v. *Blair,* 26 Miss. 322; *Robertson* v. *Cloud,* 47 Ib. 210; Story on Agency, § 107; *Toyloe* v. *Ins. Co.,* 9 How. (U. S.) 390; *Minn. Oil Co.* v. *Collier Whitelead Co.* 4 Dill. 431.

Delivery of the Sims telegram at Chattanooga was not essential. Such was the law at one time in Mass. *Lewis* v. *Browning,* 130 Mass. 173. But the weight of authority is the other way. Here the offer was made by letter, and the telegraph designated as the agency by which to communicate the acceptance. Therefore,

when Sims handed his message to the operator he was entitled to the property. This was one hour before plaintiffs sent their telegram, and, therefore, they could never become owners of the property as against Sims. If it was a wrongful act to delay the Sims message, plaintiffs could not take advantage of it.

2. For the reasons stated above, appellants were not prejudiced by the action of the court in overruling their demurrer to the 4th plea, as under the general issue they got the benefit of every possible inquiry that could be made in the case. *Wilkinson* v. *Cook*, 44 Miss. 367; *R. R. Co.* v. *Ragsdale*, 46 Ib. 458; *Ins. Co.* v. *Francis*, 52 Ib. 458.

3. By the admission of plaintiffs, the allegations of the 4th plea were fully made out. There is no proof that the Sims message was delayed on account of negligence, and as to this the burden was on plaintiffs. But, if the Sims message was *negligently* delayed, the deed to Sims was not made until December 13, and, if plaintiffs' message gave them the right to the property, why did they not file a bill for specific performance? The crucial test of complainants' right is, whether they could have maintained such a bill. If they could not, the telegraph company has done them no damage. Carothers got things into a muddle by writing two letters of the same kind; but being a lawyer he knew the relative rights of the parties before the title was passed, and adjusted them accordingly.

*E. H. Bristow*, on the same side.

The question as to whether plaintiffs would have become the purchasers of the lot in Chattanooga if their telegram had been promptly sent, was an issuable fact which has now been tried. As alleged in the 4th plea, Carothers, at the time of writing to Alexander, wrote a similar letter to Sims, proposing to sell him the lot, and he replied, unconditionally accepting the offer. This made him the purchaser of the property. *Trever* v. *Wood*, 36 N. Y. 307, s. c. 93 Am. Dec., 515; *Haas* v. *Myers*, 111 Ill. 521; *Moulton* v. *Kershaw*, 69 Wis. 316; *Perry* v. *Ins. Co.*, 15 R. I. 380. It is immaterial that Carothers says he would have given the advantage to the one whose telegram first came to hand. The law

gave the property to Sims upon the delivery of his telegram to the operator. That is, he then had a binding executory contract, but the deed was not executed until a week later. No question can arise under the registry laws of Mississippi or Tennessee as to the rights of a purchaser without notice. Miss. Code, 1880, § 1212; Tenn. Code, M. & V., §§ 2287–9.

The legal situation then is, that Sims accepts first and concludes the contract. Plaintiffs accept an hour later and conclude nothing. It is probable that the cause of the delay in sending both messages was the same, and that had Alexander's message not been delayed, that to Sims would not. In that case the message to Sims would have been received one hour ahead. The burden was on plaintiffs to show that this would not have been so if both messages had been promptly transmitted, and they have not met it. If Alexander's message had been received at first, one hour after it was sent, and that of Sims being delivered at eight o'clock P.M. the same day, plaintiffs still would not have been entitled to the lot, because the deed was not then executed, and the obligation would have rested on the owner to convey to Sims.

On a bill for specific performance, clearly Sims would have been entitled to a decree. The plaintiffs cannot recover without bringing into the transaction a new and *independent* cause, namely, the delay of the Sims message, and this is not allowable. On this point, see *Ins. Co.* v. *Tweed*, 7 Wall. 52; 1 Sutherland on Dam., 55.

Plaintiffs cannot complain of the failure to send *both* messages. If the company had performed its exact duty to both parties, plaintiffs would not have been entitled to the land. On this point, see *Hadley* v. *Baxendale*, 9 Exch. 341; 1 Sutherland on Dam., 74, 76; 2 Ib., 363; *Squires* v. *Tel. Co.*, 98 Mass. 238.

Speculative and remote damages are not allowable. Here the parties could not have contemplated the company's negligence with respect to the third party; therefore, plaintiffs are entitled to recover nothing more than the eighty cents paid for sending the telegram.

Alexander's telegram is conditional, and did not close the trade. *Squires* v. *Tel. Co.*, *supra*; 1 Parsons Con., 476–7. It is admitted

that the Sims message was absolute, and therefore was an acceptance, binding both parties from the time it was delivered to the operator.

In suits of this character the object is not to *punish* the defendant, but simply to compensate the injured party. If Sims was in law and equity entitled to the land, and *got* it, how are plaintiffs injured? If they have any complaint at all, their remedy is against Carothers, who admits his wrong in making the same proposition to two different persons at the same time.

*W. P. & J. B. Harris*, on the same side.

The case is now different from that which was presented to this court on the former appeal. The allegations of the declaration are not proved, and a wholly different case is made out. Suit is for the loss of an *opportunity* to make a bargain, and the question is as to the *value of the chance.* By the defendant's 4th plea, filed since the case was remanded, it is set up that Carothers wrote a letter to Sims identical with that written to Alexander, and the letter is now in the record. It contains information and advice, but no contract stipulations. It is clear that Kessler had never given Carothers authority to entangle him by making *two* contracts. These letters were merely efforts to secure a purchaser. Plaintiffs did not have the exclusive right until December 6 to buy the property, but at most only an equal opportunity with Sims, or *half a chance.* But Sims, by superior diligence, sent his message one hour in advance. Then plaintiffs' half a chance was reduced to *no chance at all.* The messages reached Carothers in the order in which they were sent. Sims never lost his advantage. Tested by the rule which courts must apply to practical affairs, Alexander's *opportunity had no particular value* when the contract was made with the telegraph company to transmit his message. Plaintiffs' message then had to *overtake* and *pass* that of Sims, which was on its way. The law requires messages to be transmitted in the order in which they are received. Allen's Tel. Cases, 366; Gray's Com. by Tel., 38, 39; 16 Nevada, 233.

The second message could not have outstripped the first, except

.from neglect or unlawful contrivance. *Negligent transmission was therefore not the cause of the loss.* The message which started first was delivered first. The real cause of plaintiffs' failure to obtain the lot was the sending of the prior message.

Mere delay in transmission, though caused by negligence, cannot be the ground of special damages here claimed, without inflicting punishment. There is nothing in the evidence to show that the owner of the lot would not have accepted any offer during the 6th or 7th, regardless of sending these messages.

The evidence shows that the main wire to Chattanooga would be reached at Artesia. These messages were not sent on rival, or even independent lines. It is therefore to be concluded that the cause which delayed one message, delayed both, and that as Alexander waited one hour too long, the delay caused the loss.

It cannot be claimed that the company is liable for two losses on account of the failure to purchase this lot. Four or five messages might have been sent, and according to plaintiffs' theory the company would have been liable for the loss of the bargain and the value of the lot in each case.

It appears plainly that Carothers, a friend and intermediary, gave away plaintiffs' opportunity before they ever assumed to accept his offer.

It is not material to our position to claim that the delivery of the Sims message in Columbus completed the bargain. Put the case as depending on the delivery of the message at Chattanooga.

The dispatch in writing stands on the same footing of a letter deposited in the mail. Gray on Com. by Tel., 110, 112, 114; 36 N. Y. 307. Message written and signed is good under the statute of frauds. 4 Dill. 431; 54 Md. 138.

We put the case on the ground that the alleged loss of opportunity was not a loss, because the *opportunity did not exist when the message was sent.* We cite *Tel. Co.* v. *Hull*, 124 U. S. 444; 65 Maine 87; 60 N. Y. 487; 71 Ib., 133; 98 Mass. 238; 2 Sutherland on Dam., 215.

(Counsel also made a written argument as to the value of the

property, but as this was not passed upon by the court, the argument is omitted.)

Argued orally by *C. H. Alexander*, for appellants, and *W. P. Harris*, for appellee.

COOPER, J., delivered the opinion of the court.

The letter from Carothers to Alexander of date December 3, 1886, was not an offer to sell the land therein referred to. It was only a letter of advice, and if Alexander's telegram had been promptly delivered he would not thereby have become entitled to a conveyance of the land upon payment of the price at which he had been informed it could be bought.

Both an offer to sell and an acceptance of the offer are essential to constitute a contract of sale, and if it be true that Alexander construed the letter as an offer and accepted it as such, his action could not make it what it was not. So much of the declaration as seeks recovery on the ground that an offer of sale had been made and accepted by the plaintiff, but which failed of consummation by reason of the negligent failure of the company to transmit *the acceptance* may be disregarded, because there is a total failure to show an *offer* for acceptance. The true ground of complaint as developed by the evidence is that the plaintiffs delivered to the company a message directing and instructing Carothers to buy the lot, which message, if transmitted in due course of business, would have enabled the plaintiffs to purchase at the price of $3000 property worth $5000, but which, by the negligence of the defendant, was not delivered until the opportunity of making the purchase had been lost. Instead of stating the case according to facts and standing on it, the plaintiffs have devoted the principal portion of the declaration to counts for breach of contract in failing to deliver an acceptance of an offer of sale. The defendant, seizing upon this aspect of the case, sets up in defense that at the same time that Carothers made the offer to plaintiffs to sell the lot, he also made a similar offer to one Sims, who accepted it by delivering to the telegraph company for transmission a message addressed to Carothers one hour before the plaintiffs delivered their message, whereby he (Sims) became

entitled to the land before plaintiffs had accepted the offer made to them. But the admitted facts show that the letter to Sims was a counterpart of the one written by Carothers to plaintiffs, and as it contained no proposal to sell the land, Sims' acceptance of it as an offer by delivering his message to the company, did not complete a contract of purchase by him.

The evidence tends to show that plaintiffs' message should have been delivered to Carothers at from two to three o'clock P.M., of December 6th; that at that time the message sent by Sims had not been received by Carothers, and if plaintiffs' message had been then delivered Carothers could and would have secured the lot for the plaintiffs. If this be true (and it is a question of fact to be determined by the jury), and if it be also true that the delay was caused by the negligence of the defendant, and that plaintiffs have sustained a loss by failing to secure a bargain, the defendant is liable. The condition of things as they really existed at Chattanooga, when plaintiffs' message should have been delivered, and not what they would have been if Sims' message had been seasonably delivered, is to be looked to. The defendant cannot exonerate itself, if otherwise liable, by showing that if something else had occurred, which did not, the plaintiff would not have secured the property.

The development of the case has demonstrated that so much of the plaintiffs' declaration as counts upon their message as an acceptance of an offer to sell should be abandoned; it serves only to encumber and confuse the real controversy, which is a narrow one and hinges solely upon the count charging a failure of the defendant to transmit the message as one instructing Carothers to buy the land.

*The judgment is reversed and cause remanded.*