DODD GROCERY COMPANY *v.* POSTAL TELEGRAPH-CABLE COMPANY.

1. The petition in substance set forth a cause of action.
2. A telegraph company is liable in damages for unreasonable delay in the transmission or delivery of a cipher message, as if it were intelligible.
3. Where an agent sends a telegram for his undisclosed principal, the principal may maintain an action in his own name for damages resulting from unreasonable delay in its transmission or delivery.

Submitted January 4,—Decided January 28, 1901.

Action for damages. Before Judge Lumpkin. Fulton superior court. February 3, 1900.

The Dodd Grocery Company sued the Postal Telegraph-Cable Company for $170.80 as damages for failing to transmit and deliver a telegraphic message within a reasonable time. The petition alleged, in substance, that on April 20, 1898, William Henderson of New Orleans telegraphed to J. H. Andrews, a merchandise broker of Atlanta, authorizing him "to sell two hundred barrels of sugar at a certain price named in said telegram;" that Andrews at once "submitted to [petitioner] the proposition contained therein; . . that petitioner agreed to accept the proposition, and to purchase said sugar at the price named, and instructed said Andrews to close the sale with William Henderson at once by telegram;" that as soon as the purchase was made, Andrews, acting under such instructions, delivered to the defendant company, at about 11 o'clock on April 20, 1898, a cipher message directed to William Henderson, New Orleans, Louisiana, ordering the sugar shipped at once to petitioner; "that said J. H. Andrews was acting as the agent and

representative of petitioner in sending said telegram to William Henderson and for all purposes in closing the sale of said sugar; that petitioner, or its said agent, paid to defendant the charges demanded therefor;" that defendant permitted such message, though delivered to it for immediate transmission, to remain in its office for about three and a half hours before transmitting it, and failed to deliver it to William Henderson until about three o'clock on the day defendant received it; that "in the meantime the price of sugar advanced, and petitioner was forced to pay said advanced price;" that, as to the purchase of the sugar, "it is a general custom of the trade, in such transactions, that said sale could not be finally closed until said Henderson had received information that his offer to sell the sugar as aforesaid had been accepted, and that he had in turn agreed to the same," and all parties to the sale knew of and recognized this custom; "that had defendant delivered said telegram in a reasonable time, petitioner would have bought the sugar at the first agreed price;" that "for said gross negligence and disregard of duty said defendant became liable to petitioner as aforesaid, the same being the increased price on [over ?] that plaintiff would have paid had said message been promptly delivered." A copy of the cipher message with a translated copy thereof was attached to the petition, and there was an allegation that petitioner had complied with all the rules and regulations of the defendant entered on the back of its blank forms for telegrams.

The defendant demurred to the petition, on the following grounds, among others: "1. Because the averments of said petition do not set forth any cause of action in behalf of plaintiff against this defendant. . . 4. Because it does not appear from the averments . . of said petition . . how J. H. Andrews became the agent and representative of plaintiff, and how the said plaintiff had any interest in said telegram. The said averments fail to show any privity of interest between the plaintiff and the defendant. They fail to show any knowledge or notice to this defendant that said Andrews was acting otherwise than for himself, or that the message referred to business of any interest to any one other than the sender and sendee of the message. They fail to show that this defendant had any knowledge or notice that said Andrews was acting as agent for said plaintiff in sending the message, or that said plaintiff had any interest in the subject-matter of said message, the said averments with regard to the

agency of the said Andrews being conclusions of law rather than statements of fact. . . 6. Because it fully appears from the averments in said petition, that if the plaintiff sustained any loss in the premises, it was caused by the failure of William Henderson to carry out a contract made through his agent, J. H. Andrews, and not by any neglect of duty or breach of contract on the part of this defendant." The court ordered "that the demurrer be sustained on grounds Nos. 1, 4 (latter part), and 6," and in the judgment dismissing the case said: "The message was in unintelligible cipher. There was nothing to indicate to the company that plaintiff company had any interest in it, or what damages would accrue to it from delay. The sender did not purport to act for plaintiff, but signed his own name, and if any possible injury from delay was indicated in the message, it would be injury to the sender, not to plaintiff. The amendment alleges that the message was sent under a custom of the trade, ' that said sale could not be finally closed until said Henderson had received information that his offer to sell the sugar as aforesaid had been accepted, and that he had in terms agreed to the same.' Under this allegation it would seem that even if it were alleged that the company knew or could have found the address of Henderson and delivered the message, it would have still remained for him 'in terms to have agreed to the same' before there would be a binding contract."

*J. E. Warren*, for plaintiff.　　*Felder & Rountree*, for defendant.

FISH, J. 1. The petition is very loosely drawn, but it can be gathered from its allegations that plaintiff, through its agent, on April 20, 1898, delivered a message to the defendant at its Atlanta office, to be at once transmitted to William Henderson at New Orleans, Louisiana, accepting his offer to sell two hundred barrels of sugar at "a certain price." That plaintiff paid defendant to send such message, but that defendant failed to transmit and deliver it within a reasonable time. That there existed a custom of trade in such transactions, known and recognized by Henderson and the plaintiff, that the sale of the sugar could not be finally closed until Henderson had received information that his offer to sell it at the price named had been accepted by plaintiff, and Henderson had in turn agreed to the same. That, had defendant transmitted and delivered the message within a reasonable time, plaintiff would have

bought the sugar from Henderson at the price he first offered it; but that the price of sugar advanced between the time when the message should have been delivered and the time it was actually delivered, so that plaintiff was forced to pay the advanced price, and was thereby damaged in the difference between the two prices on the lot of sugar in the sum of $170.80. We think, therefore, that the petition sufficiently set out the contract between plaintiff and defendant, the breach of the same by defendant, and the damages thereby caused to the plaintiff, as against the first and sixth grounds of the demurrer.

2. In *Western Union Telegraph Company* v. *Fatman,* 73 *Ga.* 285, this court held that a telegraph company is liable in damages for unreasonable delay in the delivery of a cipher dispatch, and that the recovery in such a case is not limited to nominal damages, although the company may have no knowledge, except such as the dispatch itself may convey, of the special circumstances making it important. See also Thompson's Law of Electricity, § 372, and cases cited in note 1. It is not necessary, therefore, that the message should indicate what damages may result to the sender from delay in its delivery.

3. The petition alleges that the message was delivered to the telegraph company by Andrews, a merchandise broker, in pursuance of plaintiff's instructions, and that in so doing he acted as the agent of the plaintiff. Under the facts alleged, Andrews was the agent of the plaintiff and of Henderson also. He was Henderson's agent to offer for sale the sugar at a fixed price, and the plaintiff's agent to inform Henderson of its acceptance of his offer. Thus acting as the agent of both parties to the sale, Andrews' duties to his respective principals were not inconsistent. See 4 Am. & Eng. Enc. L. (2d ed.) 964—5. If Andrews in sending the telegram was acting as the plaintiff's agent, then the plaintiff may sue in its own name for damages resulting to it from unreasonable delay in the transmission or delivery of the message, though the defendant company had no knowledge of such agency. As was held in *Woodruff* v. *McGehee,* 30 *Ga.* 158, "When an agent makes a contract for his principal but conceals the fact that he is an agent, contracting as if he were principal, the principal may at any time appear in his true character, and claim all the benefits of the contract from the other contracting party, so far as he can do so without injury to that other by the

substitution of himself for his agent." See also *Spain* v. *Beach*, 52 *Ga.* 494; *Watertown Steam Engine Co.* v. *Palmer*, 84 *Ga.* 368. The governing principle is that an undisclosed principal, as the "ultimate party in interest, is entitled, against third persons, to all advantages and benefits of such acts and contracts of his agent, and consequently that he may sue in his own name on such contracts." Story, Ag. § 418; Thompson, Law of Elec. § 432, and cases cited in note 2; 1 Am. & Eng. Enc. L. (2d ed.) 1168 (b).

　　　　*Judgment reversed. All the Justices concurring.*