## PURDOM NAVAL STORES CO. v. WESTERN UNION TELEGRAPH CO.

(Circuit Court, S. D. Georgia, W. D.   May 3, 1907.)

1. TELEGRAPHS—MESSAGES—FAILURE TO DELIVER—RIGHT TO SUE.

Where P., in sending a message, accepting a proposition for the sale of a business in his own name, was in fact acting as agent of plaintiff, plaintiff was entitled to sue the telegraph company for failure to deliver the message.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, § 37.]

2. FRAUDS, STATUTE OF—CONTRACT—MEMORANDUM—SUFFICIENCY.

The statute of frauds does not require that every detail of an agreement for the sale of chattels shall be in writing at the time the contract is made, but only requires that some memorandum or note thereof shall be in writing at some time prior to suit brought.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, § 210.]

**3. CONTRACTS—ACCEPTANCE BY AGENT—TELEGRAM.**

A telegram, accepting an offer for the sale of a business, signed by plaintiff's agent acting for plaintiff, was sufficient to make an enforceable contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 120.]

**4. FRAUDS, STATUTE OF—RIGHT TO DEFENSE.**

The benefit of the statute of frauds as a defense is personal, and cannot be availed of by a third person.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, § 344.]

**5. CONTRACTS—OFFER AND ACCEPTANCE.**

A corporation, operating a naval stores business offered its property on September 19, 1905, for $18,900, when the company had finished its year's business, the offer to be open for acceptance on or before October 4, 1905. On October 3d plaintiff forwarded a telegram of acceptance. *Held*, that the offer contemplated an immediate sale on acceptance, though possession was not to be surrendered until the expiration of the year's business, and hence the offer was not so conditional that its acceptance would not constitute a contract.

**6. TELEGRAPHS—MESSAGES—FAILURE TO DELIVER—PLEADING.**

Where a telegraph company failed to deliver a message, accepting an offer for the sale of the addressee's business, possession to be delivered on completion of the addressee's business year, a complaint for damages, failing to definitely allege the time when possession and delivery were to be accomplished, was defective.

**7. SAME—DAMAGES.**

Where a telegraph company failed to deliver a message, accepting a corporation's offer to sell its business for a specified price within a certain time, and the corporation thereupon refused after the expiration of the time to comply with such offer, the telegraph company was liable to the sender of the message for the difference between the price specified in the offer, and the value of the corporation's business at the time an acceptance was attempted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, § 72.

Measure of damages in actions against telegraph and telephone companies, see note to Western Union Telegraph Co. v. Coggin, 15 C. C. A. 235; Western Union Telegraph Co. v. Morris, 28 C. C. A. 59.]

**8. SAME—RULES—APPLICATION.**

A rule of a telegraph company, that it would not be liable for damages in case of an unrepeated message, was inapplicable, where there was an utter failure to deliver the message at all.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, §§ 39, 43, 46.]

**9. SAME—SUBSTANTIAL COMPLIANCE.**

Where two messages in the same terms were sent to two different points a short distance apart, by which plaintiff attempted to accept a corporation's offer for the sale of its business, in either of which places the vendor could have been found, such telegrams constituted a substantial compliance with the rule of the telegraph company, requiring that a message be repeated in order to create a liability on the telegraph company.

George S. Jones, for plaintiff.

Joseph H. Hall, Warren Roberts, and Charles Akerman, for defendant.

SPEER, District Judge. The Purdom Naval Stores Company brings its action for damages against the Western Union Telegraph

Company for an alleged failure to deliver a telegram. The petition states that on September 19, 1905, the Pineville Naval Stores Company made to the plaintiff an offer in writing to sell its turpentine and naval stores business, with all property and effects, located at Hahira, Ga., for the sum of $13,900. This offer, after describing the property in question, is as follows:

"We offer the above property when we have finished our year's business for $13,900."

By agreement, these terms were left open for acceptance on or before October 4, 1905. On October 3d, I. W. Purdom, president of the plaintiff company, delivered to the defendant's agent in the city of Savannah, a telegraphic acceptance of the offer made by the Pineville Naval Stores Company. This was addressed to. one J. F. Robinson, manager of the company, at Cecil, Ga., and is in this language:

"We will take your Hahira place. Will be home noon train tomorrow. Meet me.
"[Signed]                                             I. W. Purdom."

The telegram was not delivered until October 12th, and the time for acceptance having expired, the Pineville Company withdrew their offer, and refused to sell. The plaintiff, therefore, claims as damages against the telegraph company the amount of $3,100. This is the difference between $17,000, the alleged market and actual value of the property, and the price at which the plant was offered.

The defendant has demurred to the petition upon the following grounds:

"(1) That it does not appear from the message that the Purdom Naval Stores Company ever had any contract with the telegraph company, or that I. W. Purdom, the sender of the message represented the plaintiff company.

"(2) On the special grounds, that the facts as alleged do not sufficiently show the value of the property, or how the damages claimed arose."

The telegraph company contends that it is not liable, as the identity of the sender was not disclosed to its agent at Savannah, because the message was sent by Purdom, the president, and not in the company's name. It further seeks in argument to set up the statute of frauds, on the ground that the memoranda between the plaintiff and the Pineville Company do not comply with the requirements of the statute, and therefore constitute no valid contract. The contention is also made that the Pineville Company could not have been bound, because the offer was not immediate and unconditional; but the sale was to be made only upon the termination of the year's business. The defendant company cannot then, it claims, be held liable for damages, which it insists the plaintiff would not have suffered.

From the pleadings it is obvious that Purdom was, in fact, the agent of the plaintiff company. It is the general rule that where an agent enters into a contract for his principal, without disclosing that principal's existence, the other party may, at his election, hold either the principal or the agent. In other words, the principal may be held liable at the party's option, but the agent also, by presuming to act in his own name, renders himself individually liable. Welch v. Goodwin, 123 Mass. 71, 25 Am. Rep. 24; Merrill v. Kenyon, 48 Conn. 314, 40 Am.

Rep. 174. The agent, however, being in a fiduciary relationship, cannot, by thus acting individually, defeat his principal's rights. The real principal, therefore, may avail himself of his agent's transactions in that capacity, and, if a contractual relation has been created thereunder with a third party, the principal may sue upon that contract. Dodd Grocery Co. v. Postal Telegraph Co., 112 Ga. 685, 37 S. E. 981; Taintor v. Prendergast, 3 Hill (N. Y.) 72, 38 Am. Dec. 618; Hunter v. Giddings, 97 Mass. 41, 93 Am. Dec. 54; Wood v. Bank, 129 Mass. 358, 37 Am. Rep. 366. Obviously, then, the fact that the message was signed and sent by its agent will not of itself defeat the Purdom Company's right of action. Besides, if it be made to appear by the proof that Purdom was in fact acting for his company, it would suffice, so far as that question is involved, to maintain this action. The telegraph company was no party to the contract of sale. Its contract was to transmit and deliver the message for the usual toll. Nor can the telegraph company avail itself of the statute of frauds. To enforce such a contract, it is not necessary that every detail of the agreement, but only that some memorandum or note thereof, shall be in writing. This need not be at the time of making the contract. It may be at any time prior to the action. The statute merely states that "no action shall be brought." Failure to comply with its terms does not then render the contract void, but unenforceable. Bird v. Munroe, 66 Me. 337, 22 Am. Rep. 571; Townsend v. Hargraves, 118 Mass. 325. Since Purdom acted as agent for the company, his signature on the telegram of acceptance made an enforceable contract. Heffron v. Armsby, 61 Mich. 505, 28 N. W. 672; Williams v. Woods, 16 Md. 220. It is besides true that the benefit of the statute of frauds as a defense is entirely personal, and cannot be set up by third parties. Cahill v. Bigelow, 18 Pick. 369; Dailey v. Kindler, 35 Neb. 835, 53 N. W. 973; St. Louis R. Co. v. Clark, 121 Mo. 169, 25 S. W. 192, 906, 26 L. R. A. 751; Clark on Contracts (2d Ed.) 96. It follows that whether or not the statute was complied with by the parties to the proposed sale, that question cannot now be raised by the defendant company, which was no party to the transaction. The telegraph company, however, claims that there was no such unconditional offer as would make a valid contract, from the loss of which damages would flow. But it is clear from the alleged circumstances surrounding the transaction that there was an agreement for immediate sale in contemplation of the parties. It is true that possession was not to be surrendered until the expiration of the year's business; but this did not affect the validity of the agreement. This is clear from the fact that a time limit until October 4, 1905, had been affixed to the Pineville Company's proposition; but the acceptance by the Purdom Company within that time would have been complete had the message been transmitted.

As grounds of special demurrer, the defendant claims that it is not sufficiently apprised by the plaintiff's averments either as to the basis of value of the property, or the nature of the damages claimed. It further insists that the plaintiff is not entitled to the difference between the offered price and the market value, but only by way of nominal damages to the cost of sending the telegram. Since the familiar case of Hadley v. Baxendale, 9 Exchequer, 341, the principle of damages

for such breaches of contract has been clearly defined.  The rule fixed is as follows:  (1) A party is liable for such damages as he would contemplate at the time of making the contract as naturally and probably consequent upon its breach.   (2) If peculiar circumstances beyond the ordinary course of events, from which special damages may ensue, are communicated to the party when the contract is made, he is liable to the full extent thereof.   It is, however, true that he cannot be held for special damages arising from any unusual circumstances of which he was not apprised.  All such remote, speculative, or consequential damages are not recoverable.   The doctrine is discussed by this court, in Taylor Manufacturing Company v. Hatcher Manufacturing Company (C. C.) 39 Fed. 440, 3 L. R. A. 587.  The plaintiff here, however, disclaims all right to recover profits.

It has been held that where a telegraph company fails to deliver a message ordering goods the measure of damages is the difference between the price due under the order, and that which the plaintiff was, or would be, obliged to pay at the same place, in the exercise of due diligence, to obtain a like quantity and quality.  Dodd Grocery Co. v. Postal Telegraph Co., 112 Ga. 685, 37 S. E. 981; Western Union Telegraph Co. v. Way, 83 Ala. 542, 4 South. 844; Mowry v. Western Union Telegraph Co., 51 Hun, 126, 4 N. Y. Supp. 666.   In case of failure to sell, by the early English authorities, it was held that a party could recover as nominal damages only the amount of purchase money actually paid for the land.  This restricted rule was varied only in case of palpable bad faith, where the owner sold the property to another, in which event the injured party might recover the difference between the original contract price, and that which the owner received for the property.  This doctrine grew out of the unsettled condition of land titles in England prior to the registration acts.  The vendor, on account of those conditions, often found it difficult to produce title deeds, and the vendee could not enforce a contract to sell.  The English courts, therefore, often favored refractory vendors, and, upon a misconception of these decisions, some courts of this country have allowed a vendee to recover only the amount of money actually paid.  Under modern conditions, however, American courts have gradually recognized this rule as obsolete.  It has been accordingly held that, where a telegraph company fails to deliver a message, and a party thereby lost the opportunity to purchase for $3,000 land which was worth $5,000, he might recover the difference; such damages not being remote or conjectural.  Alexander v. Western Union Telegraph Co., 67 Miss. 386, 7 South. 280.  See, also, Western Union Telegraph Co. v. Snow, 72 S. W. 250, 31 Tex. Civ. App. 275.  The general rule, then, which the majority of courts now hold, seems to be that the proper measure of damages is the difference between the contract price and the market and actual value of the property at the time of the proposed delivery or execution of the contract.  Essex Co. v. Pacific Mills, 14 Allen (Mass.) 389; Bozeman v. Rose, 40 Ala. 212; Phillips v. Ocmulgee Mills, 55 Ga. 633.

Under the allegations of the petition, the property was to be delivered when the Pineville Company had finished their year's business.  In order, however, that it may meet, if it can, the averments and proof

of the plaintiff as to the market and actual value, it would seem in accordance with the rules of correct pleading that the telegraph company should be more definitely apprised of the time when possession and delivery were to be accomplished; that is to say, the time when the year's business was to be finished. An amendment will be required as to this feature; but upon the other grounds urged and argued, the demurrer will be overruled. ·

While interposing a demurrer, the defendant also, in a paragraph of its answer, alleged that the telegram in question was not repeated as required by a stipulation of the form on which it was printed. To this the plaintiff specially demurs. Upon this subject, in a case of error in transmitting a message, it has been held, in Primrose v. Western Union Telegraph Co., 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883, that this requirement of repeating was reasonable, and should be enforced. That, however, was not a case of an utter failure to deliver a message. Here two messages were sent from Savannah—one to Sparks, and the other to Cecil. The telegraph company forwarded the message to Ocilla. It could scarcely be insisted that the plaintiff should not recover, because he did not repeat the message to a locality wholly different from that designed. The object of repetition is to make sure the verbiage of the message itself. The rule in Georgia, and in most of the states, differs upon the point in issue from that held by the Supreme Court, which we may safely assume was restricted to interstate messages alone. This message was intrastate; that is, from one point to another or others in Georgia. We think, however, that this is one of those questions of general commercial law, upon which the national courts make their independent judgment. It being not a failure to correctly transmit the message, but a failure to send it to the right destination, it does not seem that the failure on the part of the sender to repeat ought to defeat its right to recover. Besides, since two messages in identical terms were sent by the Purdom Company to Sparks and to Cecil—these localities in close proximity to each other—in either of which the vendor could be found, it is in substantial effect a repetition of the telegram.

For these reasons, this feature of the defendant's answer should be stricken, and it will be so ordered.