HOLLIS *v.* THE WESTERN UNION TELEGRAPH COMPANY.    91 801 / h123 223

1. The measure of damages against a telegraph company for deviating from the terms of a message correctly reporting the state of the market for a particular article which the receiver of the message is induced by it to send forward for sale, is the difference between the actual state of the market and the terms of the message as erroneously transmitted overstating it, provided the plaintiff's actual loss amounts to that much.

2. The plaintiff's correspondent, in reply to a message inquiring as to the state of the market for watermelons, furnished to the company a message in these terms: "No melons on the market; will bring twelve to fifteen dollars per hundred." As transmitted by the company and delivered to the plaintiff it read thus: "No melons on the market; will bring twenty to twelve dollars per hundred." At the trial, the evidence in behalf of the plaintiff (the sender of the message being the witness) was: "I sent a dispatch, and it did give the correct market price of melons at the time. I do not remember the exact words of it, but it quoted melons at fifteen to twenty cents." In fact the message did not so quote them. *Held,* that a jury could infer from this evidence that the market was, not as the witness remembered it, but as this message stated, that is, from twelve to fifteen dollars per hundred, an average of thirteen and a half cents per melon, and that as the average per melon indicated by the erroneous message was sixteen cents, the plaintiff's loss may have amounted to two and a half cents per

melon. *Held*, further, that the plaintiff's misconduct or negligence in trying to sell the melons himself instead of employing a proper agent to do so, would not affect his right to recover, inasmuch as he realized less than the actual market price, and nothing appears to suggest even a possibility that more than the market price could have been realized. He should be treated as having obtained the market price, no matter how much less he did obtain or what caused him to do so.

3. In such case the state of the market at the point at which the watermelons were at the time the dispatch was received, and any actual sales which the plaintiff made or could have made at that point, had no relevancy on the question of measuring his damages, the state of the market from which the dispatch was sent being alone relevant.

4. The court erred in granting a nonsuit.

July 24, 1893.

Before Judge MARTIN. Taylor superior court. February term, 1892.

W. S. WALLACE, for plaintiff.

GUSTIN, GUERRY & HALL, for defendant.

BLECKLEY, Chief Justice.

1. By an error of the company the price of watermelons was overstated in the message. As the message was acted upon by Hollis, he had a right to expect that the market in Atlanta was as the message which he received represented it. As it was not so in fact, his damage would be measured by the difference between the market he had a right to expect and the one which actually existed, provided his loss amounted to that much. If his loss amounted to less, of course the amount of his loss would be the amount of his recovery.

2. The message furnished to the company for transmission quoted melons at twelve to fifteen dollars per hundred. As transmitted by the company and delivered to the plaintiff, it quoted them at twenty to twelve dollars per hundred. The sender of the message testified at the trial that his message gave the correct market price of melons at the time; that he did not remember the exact words of it, but "it quoted melons at fifteen to twenty

cents." It did not so quote them, for the exact contents of the message were in evidence or agreed upon, and the equivalent of its terms was twelve to fifteen cents. The jury could well have inferred that the market price was as stated in the message and not as the witness remembered it at the trial. The average of the terms of the message, correctly quoted, would be 13½ cents per melon, and the average per melon indicated by the erroneous message which was delivered was 16 cents. There is no evidence of any change in the market from the time the dispatch was sent until the plaintiff's melons arrived in Atlanta and were put upon the market. His loss therefore may have amounted to 2½ cents per melon. It was contended that he had barred himself from recovering anything by mismanaging the melons in Atlanta, endeavoring to sell them himself instead of entrusting the sale to a competent person, and that his loss was the result of his own fault; but there is no pretence that he could have obtained by any sort of management more than the market price. Let him be treated, therefore, as having realized that price, and still he would be entitled to be compensated for the balance of his loss, which was the difference between that price and the one that could have been obtained had the market been as the erroneous dispatch represented it. Very likely the failure to find the market which he was entitled to expect was the cause why he undertook to manipulate the melons in person and did not employ a competent agent to do so for him. Had the market been as represented, he might have felt himself able to afford to undergo the expense of employing an agent to sell, and probably would have done so. The loss which he sustained by not employing such an agent could not have been more than the actual market price, and we have already said that so much of his loss as was covered by that price he must bear, no matter what occasioned it. It is certain.

that the erroneous dispatch did not occasion it, and for that reason the telegraph company is not chargeable with any part of it. But the fair presumption is, that had the market price been as high as the erroneous dispatch quoted it, that price could and would have been realized on the plaintiff's shipment. In fixing upon the averages of the two readings of the message and applying them to the case, we have assumed that the plaintiff's melons were average melons, there being nothing in the evidence to the contrary, or certainly nothing to show that they were below the average. If it appeared that they were melons of the lowest class, such as would have been worth as a whole only twelve cents apiece, then there would have been no loss at all, for that is the minimum mentioned in both readings of the dispatch. So, if it appeared that the melons were all of the highest class, it would, for a similar reason, be improper to apply to them the average of the prices, but the loss should be estimated with reference to the highest price named in the erroneous reading, that is twenty cents each. We only say that on the present state of the evidence as we find it in the record, the jury could hold the company responsible for loss at the rate of 2½ cents per melon. We will add that if the market had declined in the interval between the sending of the dispatch and the time the melons arrived and were put upon the market, this decline should be taken into the account and proper allowance be made for it. What that allowance would or should be we have not considered, because no evidence of a decline is before us.

3. At the time the erroneous message was received, the watermelons were already loaded in cars and were standing on the side track of the railway at Butler in Taylor county. On the day before, the plaintiff had sold a car-load of melons at that place for $66 (20 cents each), and after he received the dispatch he was offered

$70 per car-load for those on the side track. And the plaintiff testified that but for the dispatch he would not have shipped these melons to Atlanta but would have sold them in Butler. We consider these facts wholly irrelevant on the · question of measuring his damages. The basis of measurement which we have suggested gives him the full benefit of the market which the erroneous message indicated, and therefore of the one which he was entitled to expect. If he gets this, it matters not what opportunities he had to dispose of the melons at Butler or what the price of them there was. By acting on the dispatch he cut loose from all advantages which the Butler market afforded as to the melons shipped, and threw himself upon the Atlanta market. Let him realize the difference between what the Atlanta market was in fact, and what the company, by introducing an error into the message, represented it to be, and any possible injury which he could have sustained by the error will be repaired.

4. As there was evidence from which the jury could have arrived at a finding of some amount in favor of the plaintiff, the court erred in granting a nonsuit.

<div align="right">

*Judgment reversed.*