## RICHMOND HOSIERY MILLS v. WESTERN UNION TELEGRAPH COMPANY.

1. A judgment on demurrer, not excepted to, is conclusive between the parties as to the points necessarily decided.
2. The overruling of the demurrer which was filed in the case at bar was a conclusive determination that a right of action existed, but did not adjudge what was the measure of damages.
3. In *Brooke* v. *Western Union Telegraph Co.*, 119 *Ga*. 694, it was held that "In the transmission of a telegraphic message the telegraph company is the agent of the sender, to whom, and not to the company, the recipient must look for damages arising out of error in the transmission."
4. If a telegram is sent containing a proposal to sell goods, but, by mistake of the telegraph company, as delivered it does not state the proposal correctly, the receiver can not recover from the telegraph company compensatory damages on the ground that if the message had been correctly transmitted, so as to contain the proposal as intended by the sender, it would have been accepted in that form and certain benefits or profits would have accrued to the receiver therefrom, it not appearing what actual loss, if any, resulted to the receiver from such error.
5. Under the facts of this case, a judgment by the presiding judge, to whom the case was submitted without a jury, in favor of the plaintiff against the defendant for nominal damages, was not erroneous.

Argued April 21, — Decided June 14, 1905.

Action for damages. Before Judge Henry. Walker superior court. September 2, 1904.

The Richmond Hosiery Mills, a corporation having its principal office at Rossville in this State, brought suit against the Western Union Telegraph Company, alleging in brief as follows: Plaintiff is engaged in the manufacture of cotton hosiery, and uses large quantities of cotton yarns and other fabrics. Finding it desirable to purchase a considerable amount of such yarns, plaintiff addressed a letter, on September 6, 1900, to Holland & Webb, a firm of commission merchants in New York City, requesting them to give to it a price on yarns. On September 10, they replied to this letter by telegram. As writ-

ten and delivered to the company for transmission, the telegram read: "Your letter 6th. Sixteen and one half cents best our Eastern mill will take, same quantity as you refer to, delivery commencing in October. Let us hear from you at once. It is a low figure, and mill will not sell under present market for January delivery." This telegram was carelessly and incorrectly transmitted, so that when delivered to the plaintiff, instead of reading, "delivery commencing in October," it read, "delivery commencing in December." There were other minor changes, but none material. As soon as this telegram was received, and acting on it in good faith, plaintiff telegraphed to Holland & Webb to purchase of them one hundred thousand pounds of yarn for December delivery, accepting the offer in the words and figures of the message as received. But Holland & Webb declined to fill the order for December delivery. The difference between October and December was not essentially material to plaintiff, and if it had known that the real time of delivery as written in the original telegram was October, it would have ordered the yarn for that month, instead of for December. Plaintiff avers that Holland & Webb would have filled the order if it had been made for October, but that the time of delivery was material to them, and they would not accept an order for December. Before plaintiff discovered, by the exercise of due diligence and care, that errors had been made in the message, the price of cotton yarns of the kind ordered by it had materially advanced, whereby it lost a large sum of money, and by the failure to effect said purchase lost trade, and had to discharge a large number of its hands and curtail production. By reason of these facts, it alleged that it was damaged in the sum of $2,000. The defendant demurred to the declaration, and the judge overruled all the grounds of the demurrer, except the fifth, which he sustained, and which was as follows: "The damages alleged to have been suffered by the plaintiff on account of loss of trade, discharge of hands, and curtailment of production are too remote to sustain a recovery." No bill of exceptions, pendente lite or otherwise, was filed to this ruling. Defendant admitted the sending of the telegram, and that, as delivered, it was not the same as when sent, but denied that it was guilty of any negligence in regard to

the matter. It denied that plaintiff telegraphed to Holland & Webb to purchase of them one hundred thousand pounds of yarn for December delivery; and alleged, that they were mere commission merchants, that they had no yarns on hand and none to sell, and whether they could buy the one hundred thousand pounds of yarn depended on the condition of the market at the time they received the telegram from the plaintiff in reply to their telegram. It denied that Holland & Webb were in a condition to fill the order if it had been made for October, and alleged that they depended on their ability to negotiate with some Eastern mill, and that whether or not such mill would have sold the yarn at the price quoted by Holland & Webb is a mere matter of opinion, and not a proper foundation on which to base a right of recovery. It denied that plaintiff had suffered any injury on account of the mistake in the telegram. Other allegations of the answer need not be set out. It is unnecessary to state the evidence in detail. The telegram referred to above was shown to have been sent by Holland & Webb, and the plaintiff sent the following reply: "Telegram received. Enter us for one hundred thousand pounds at 16–1/2, deliveries beginning in December. Please confirm your acceptance by wire. Clinch this for us." Holland & Webb replied by telegram as follows: "Your two telegrams received; mill will not accept your offer, but will accept one hundred thousand pounds, delivery in December, seventeen and a quarter cents." Plaintiff replied: "Can't raise our offer of yesterday; think mill should protect our offer of sixteen and a half; we accepted same immediately." It sent another telegram saying: "Can't raise our offer of yesterday. We accepted same immediately." And another later, saying: "We look to you for one hundred thousand pounds sixteen and a half; we accepted your offer made Sept. 10th; have written."

The vice-president and general manager of the plaintiff testified, that he first found out that there was an error in the telegram from Holland & Webb, dated September 10, about September 23, when he received a letter from them. When asked, "Did you make any effort to purchase this yarn, and what was the condition of the market after making this discovery?" he replied: "Everything was demoralized; it was the week of the Galveston flood, and the market rose on cotton three or four

cents a pound, and it was a very difficult matter to get an order placed at any price, and we didn't succeed immediately in placing an order. We placed an order subsequently for an inferior quality of yarn at two cents advance." He did not state how large an order the plaintiff placed at that advance, or how much actual loss accrued to it. He further stated, "The delivery was not material to me. I say I would have accepted the yarn for October delivery just the same as I would for December. I was the purchasing agent for the plaintiff." Evidence was also introduced, showing the price of yarns on September 16, 17, 18, 20, 22, to have been nineteen and three quarters cents per pound for October delivery; on October 12, twenty and a quarter cents per pound; that the highest price between September 10 and 22 was nineteen and three quarters cents per pound for October delivery, and the highest price between September 10 and October 12 was twenty and a quarter cents per pound; and that "the controlling price of yarns was around twenty cents during the above period of time." One of the firm of Holland & Webb testified that he sent the telegram involved in this litigation, and received an answer, the purport of which was that they should enter the plaintiff's order for a quantity of yarn, about a hundred thousand pounds, as per their telegram, but stating that it was for delivery in December instead of October, as they had written the telegram. If plaintiff had accepted the offer for yarn to be delivered in October instead of December, Holland & Webb would have filled it. They refused to do so solely on the ground of being unable to meet the conditions of delivery, the difference being that they could deliver in October, and could not deliver in December. Holland & Webb were commission brokers, and sold the output of the mill. They did not control the mill, nor its entire output. On September 18, Holland & Webb sent a telegram saying: "Telegram received. Have done nothing. You wanted December delivery, and mill would not accept." On September 10, they did not have one hundred thousand pounds of yarn of the quality and character described in the telegram. In fact they did not have any of it on hand. They contemplated placing the order with a mill, as a commission transaction.

The case having been submitted to the judge without a jury,

he found in favor of the plaintiff against the defendant $1 as nominal damages, and costs of suit. The assignment of error was in the following language:  " To the amount of which judgment this plaintiff excepted, and now assigns the same as error, and alleges the same should have been $2,000.00, and that the proof authorized and demanded said sum of $2,000.00 in damages."

*Smith & Carswell* and *R. M. W. Glenn,* for plaintiff.

*Brown & Spurlock, McHenry & Maddox,* and *G. H. Fearons,* for defendant.

LUMPKIN, J.    (After stating the facts.)    The sole question in this case is, what amount of damages was the plaintiff entitled to recover?    The transaction between the plaintiff and Holland & Webb may be considered in two possible views:    First, that the plaintiff had a binding contract with that firm; and second, that it did not.    If Holland & Webb made a proposition by telegram to sell yarn and deliver it at a certain time, and by mistake in transmission a different time was stated in the telegram as delivered, and, acting on it as thus delivered, the plaintiff accepted the proposition, according to the ruling in *Brooke* v. *Western Union Telegraph Co.,* 119 *Ga.* 694 (citing *Western Union Tel. Co.* v. *Flint River Lumber Co.,* 114 *Ga.* 576), this constituted a valid, binding contract between the plaintiff and Holland & Webb, and the plaintiff would be entitled to recover nothing from the telegraph company on account of the error.    In that case it was held that " in the transmission of a telegraphic message the telegraph company is the agent of the sender, to whom, and not to the company, the recipient must look for damages arising out of error in the transmission."    Whether this ruling is in accord with the decisions in other jurisdictions or not, it is the law of this State while it stands unreversed.    The demurrer of the defendant, however, was overruled, and no exception was taken thereto.    Hence whether this judgment was correct or erroneous, until excepted to and reversed it was binding on the parties. *Kelly* v. *Strouse,* 116 *Ga.* 874 (7).    It was an adjudication that the plaintiff was entitled to recover something of the defendant, if it sustained the allegations of its declaration by proof.    An examination of the grounds of the demurrer,

however, will show that, with the exception of the fifth ground, they all went to the general question of whether the plaintiff was entitled to recover anything of the defendant or not. The fourth ground does say, in general terms, that there are not facts alleged sufficient to entitle plaintiff to recover the damages sued for, or to maintain this action. But this is really a general demurrer. The fifth ground attacked certain elements of damage claimed, as being too remote to sustain a recovery, and the judge so held. The result of the ruling on the demurrer therefore was to determine that, on the face of the declaration, the plaintiff was entitled to recover something. But it adjudicated nothing as to the amount of such recovery, or the measure of damages. If, therefore, we treat the telegram as constituting a valid contract between the plaintiff and Holland & Webb, the question remaining for adjudication may be thus stated in the form of a paradox: If a plaintiff in law is entitled to recover nothing, but the defendant, by reason of failing to except to a ruling on a demurrer, is estopped from saying so, what is the legal measure of recovery? The judge of the superior court, who made the ruling on the demurrer, and who also heard the case without a jury, both upon the law and facts, decided that nominal damages furnished the most appropriate answer to the question above propounded; and we can not say that he erred.

So far as the plaintiff seeks to rely upon estoppel by judgment, it may perhaps have cause for regret that the defendant did not go further and specifically attack the measure of damages set up, and thus entangle itself in the web of estoppel, both as to right of action and amount of recovery. Such appears to have been the case in *Georgia Northern Ry. Co.* v. *Hutchins*, 119 *Ga.* 504. There the defendant raised by its demurrer, not only the question of the right to recover, but also the question as to whether the damages claimed by the plaintiff were of such a character as to be recoverable. The demurrer, attacked not only the whole petition, but also the different paragraphs on the subject of damages. After it had been overruled the defendant failed to except to the ruling, and thus went to trial facing a species of compound estoppel, both as to right of action and as to measure of damages. But what in real substance did the transaction between the plaintiff and Holland & Webb amount to? That firm

were commission brokers in the city of New York. They did not have yarns of their own, but placed orders with mills. Looking at all the communications between the two it seems, at least, doubtful whether the plaintiff thought that it was contracting with Holland & Webb on their individual responsibility. Its telegram of acceptance says: "Enter us for one hundred thousand pounds. . . Clinch this for us." In another telegram plaintiff says: "Think mill should protect our offer." If the matter of an anticipated dealing by Holland & Webb with a third party be left out of view, however, and the transaction be considered solely as between that firm and the plaintiff, how does it stand? The plaintiff does not pursue Holland & Webb or seek to hold them on the ground that it had a binding contract with them. It proceeds against the telegraph company on the ground that it lost the benefit of making a contract with that firm by reason of the mistake. Looked at in this light, it would seem that Holland & Webb gave to the telegraph company for transmission a telegram offering certain yarn for October delivery; that by error in transmission the telegram as delivered offered the yarn for December delivery. The plaintiff telegraphed its willingness to accept the shipments for December delivery. These telegrams, therefore, either made a complete contract, or an offer on one side which was not accepted as it was made by the other. The offer was for October delivery; the acceptance was for December delivery. Thus viewed, the plaintiff's complaint is, that, by reason of the defendant's negligence, an offer or proposal to sell on certain terms was not properly brought to it. While there is some conflict in the authorities, the more satisfactory line holds that, "compensatory damages can not be recovered of a telegraph company for failure to send or deliver a mere proposal to sell, . . . as they are contingent upon its acceptance." Beatty Lumber Co. *v.* Western Union Tel. Co., 52 W. Va. 410, and authorities there cited. Compensatory damages, as here used, mean such as measure actual loss, and not mere nominal damages or the cost of transmission. On page 414 of the authority just cited Brannon, J., used the following language: "But the trouble facing the plaintiff in this case is that there was no finished contract between the parties, but only a proposal for a contract; and there can be no contract without both a proposal and its ac-

ceptance. The failure of the telegraph company did not cause the breach of a consummate contract. It only prevented one that might or might not have been made. . . To repel the argument that the acceptance of the proposals to sell in this case was uncertain and contingent, we are told that Elias stated as a witness that his firm would have accepted that proposal, if it had been received. This will not prove the fact. That evidence does not make the fact certain. The opinion of this witness months afterwards can not go to that length." P. 418. See also Smith v. Western Union Tel. Co., 83 Ky. 104; Western Union Tel. Co. v. Hall, 124 U. S. 444; Johnson v. Western Union Tel. Co., 79 Miss. 58; *Clay* v. *Western Union Tel. Co.*, 81 *Ga.* 285; *Western Union Tel. Co.* v. *Watson*, 94 *Ga.* 202. Mr. Justice Simmons in delivering the opinion in the last-cited case said: "This action is based on the theory that if the telegram had not been shown Pitner, Watson would have made a different arrangement with him, that he would have induced Pitner to consent to use another gin until the gins he was expecting to receive should arrive, and thus get his commission on the sale of those gins. In order to do this, it would have been necessary to obtain the consent of Pitner, and Pitner might or might not have made the new arrangement with Watson. It is true Pitner says now that he would have made it; but we can not tell whether he would have done so or not; he might have been in a different state of mind then from the state of mind he was in at the trial of the case." So in the present case, treating the contract as not completed, the contention is that an offer as received by the plaintiff was for December delivery, and that if it had been for October delivery it would have been accepted. There is little doubt that the plaintiff, or its vice-president, thinks now that it would have accepted the offer, but it is exceedingly speculative, as a basis for damages, to say that if an offer had been received the plaintiff would have accepted it, and would have derived certain advantages from it.

While there is some evidence that the plaintiff placed an order at an advanced price, there is none as to how large an order was so placed, or how much the actual loss of the plaintiff was. The decision in *Hollis* v. *Western Union Telegraph Co.*, 91 *Ga.* 801, is in harmony with those just cited, making the

recovery depend upon the actual loss.    See also U. S. Telegraph
Co. v. Wenger, 55 Penn. St. 262.

Several of the authorities cited by the plaintiff in error were
cases brought by the senders of telegrams.    In some of the
other cases there was a failure to correctly transmit or promptly
deliver a message which would have closed a contract, the di-
rect result of which failure was to cause a loss.    The latter class
of cases is well illustrated by *Western Union Telegraph Co.* v.
*Fatman,* 73 *Ga.* 285, and *Dodd Grocery Co.* v. *Postal Telegraph
Cable Co.,* 112 *Ga.* 685.

*Judgment affirmed.    All the Justices concur, except Simmons,
C. J., absent.*