*J. L. Mayson, S. D. Hewlett,* contra.

---

### 8665. WESTERN UNION TELEGRAPH CO. *v.* MANSON.

The damages alleged to have been sustained were too remote, uncertain, and conjectural to authorize a recovery.

DECIDED FEBRUARY 7, 1918.

Action for damages; from McIntosh superior court—Judge Sheppard.  December 30, 1916.

*William L. Clay,* for plaintiff in error.

*Charles M. Tyson, Hitch & Denmark,* contra.

LUKE, J.  Robert Manson sued the Western Union Telegraph Company in tort, alleging that the defendant is a foreign corporation, doing business in McIntosh county, Georgia, and having an office and place of business and agent therein; that by reason of its gross negligence, as hereinafter set out, said corporation has endamaged petitioner in the sum of $2,961.87, by reason of the facts hereinafter stated; that petitioner was at all the times hereinafter mentioned, a timber merchant, and was on March 6, 1915, the owner of approximately 1,400,000 feet of timber, which he desired to sell at that time for the then market price, and to ship not later than April 1913, from Darien, Ga., to Europe; that on March 6, 1913, he was endeavoring to charter a steamer of about 700 standards for said purpose, and received on said date the following cable sent to him from London, to wit: "Roman, Darien, Have closed subject to your confirmation here 5 p. m. Charleston or substitute 700 10 112/6 Kingdom.  Continent 115 two ports

47

proper rotation Continent first if Kingdom same coast south and east or south and west considered same coast no hewn eighty discharge March 25, 15 April Watts;" to which cable the petitioner on the same date replied as follows: "Watts London confirm charter;" which cable was delivered to the agent of said Western Union Telegraph Company at its office in Darien, said county and State, by eleven o'clock a. m., for immediate transmission and delivery to Watts, London, petitioner paying therefor the sum of $1.24, the usual charges. The cable message of March 6, 1913, above referred to, addressed "Roman, Darien," and signed "Watts," was from Messrs. Watts, Watts & Co. Ltd., ship brokers of London, Eng., was addressed to petitioner by his code name "Roman," and the correct meaning thereof was as follows: "Robert Manson, Darien. Have closed subject to your confirmation here by 5 o'clock, p. m., steamer 'Charleston,' or substitute steamer, capacity seven hundred standards or 1,386,000 superficial feet of timber, variation allowed 10% over or under, freight rate 112 shillings and 6 pence per standard of 1980 feet, or $13.80 per 1000 superficial feet, for one port of the Kingdom of Great Britain, or for one port of the continent of Europe; 115 shillings per standard ($14.61 per 1000 feet) for two ports in proper rotation, continental port to be first port of discharge; if going to two ports in the United Kingdom, they are to be on the same coast, south and east coast considered same coast; no hewn timber to be shipped; 80 standards, or 158,400 superficial feet, to be discharged per day; vessel to arrive for loading not earlier than March 25th nor later than April 15th. Signed: Watts, Watts & Co., Ltd."

The petition further alleges: The 1,400,000 feet of timber herein referred to consisted of sawn pitch-pine timber in four lots, to wit: lot No. 1, composed of 752 pieces, averaging 404 superficial feet each, having an average length of 26 1/3 feet, and amounting in the aggregate to 304,484 superficial feet; lot No. 2, composed of 4276 pieces, averaging 137 superficial feet each, having an average length of 23 1/2 feet and aggregating 575,810 superficial feet; lot No. 3, composed of 1275 pieces averaging 170 superficial feet each, having an average length of 26 3/4 feet and aggregating 217,215 superficial feet; and lot No. 4, composed of 1886 pieces, averaging 159 superficial feet, having an average length of 25 3/4 feet and aggregating 300,633 superficial feet. Said Western Union

Telegraph Company, through its gross negligence, failed and neglected to transmit and deliver said cablegram to said Watts at London, and in consequence thereof petitioner failed to secure the said steamer Charleston, or substitute, and was unable to make said contemplated shipment of 700 standards of timber. On or about said March 6, 1913, timber for shipment not later than April loading was bringing 68 shillings per load, and it was not until some time later, to wit, April 17, 1913, when petitioner was able to secure another steamer for the shipment of said 1,400,000 feet of timber, and caused a delay of one month and eleven days in the shipment. Said timber was bringing the price referred to at any port in the United Kingdom of Great Britain and the continent of Europe, terms, four months less 2% for cash, conditions open market. The price referred to was 68 shillings per load of 600 superficial feet or $27.54 per thousand superficial feet. The steamer finally secured by petitioner to transport said timber was the "Portinglis," which was procured on April 17, 1913, though the charter-party was dated at Savannah, Georgia, April 21, 1913. Said steamer "Portinglis" arrived for loading May 12, 1913, and finished loading and sailed May 16, 1913. During said time the market value of said timber rapidly declined. Petitioner used all due diligence in securing as quickly as possible, and on the best terms obtainable, another steamer to transport said charge of timber. On March 6, 1913, when petitioner, but for defendant's gross negligence as above stated, would have secured the steamer "Charleston" for said shipment, the market value of said shipment, after deducting freight and other charges, was $17,850.50. By the time petitioner was able to secure another steamer, to wit, the "Portinglis," on April 17, 1913, the market value of said shipment had declined to $15,563.83, making a net loss in said market value of $2,287.67. Petitioner sold as quickly as possible, on the best terms and at the best prices obtainable, the four lots of timber comprising said shipment; the names of the purchasers, dates of sales, and prices obtained being as follows: lot No. 1, 752 pieces, aggregating 304,484 superficial feet, and lot No. 2, 4276 pieces, aggregating 575,810 superficial feet, to Bennetts & Company of Grimsby, England, June 5, 1913, at 65 shillings per load, or $26.32 per thousand feet, and 54 shillings and 6 pence per load, or $22.07 per thousand feet, respectively; lot No. 3, 1275

pieces, aggregating 217,215 superficial feet to Societe des Bois of Bordeaux, France, April 19, 1913, at 65 shillings per load, or $25.51 per thousand feet, and Lot No. 4, 1886 pieces, aggregating 300,633 superficial feet to B. Bourbouley Aine, of Bordeaux, France, April 19, 1913, at 63 shillings per load, or $25.51 per thousand feet. The word "load" as herein used means 600 superficial feet of timber. By reason of the gross negligence of the defendant as above set forth, petitioner not only lost the amount of the decrease in value of said shipment, as above recited, aggregating $2,287.67, but also sustained, by reason of said negligence, the following losses, expenses, and damages: Boom expenses for one month and eleven days, March 6 to April 17, 1913, as follows: Boom expenses, including roll for labor, $623.64. Cost of cablegrams and telegrams in connection with steamer "Charleston" and securing steamer "Portinglis," as per list and copies hereto attached, marked Exhibit "A," $50.56; total 2,961.87."

The defendant demurred generally to the petition, and insisted that the damages alleged to have been sustained are too remote, uncertain, and speculative to form the basis of a legal cause of action. The court overruled the demurrer, the case proceeded to trial, and the plaintiff recovered a judgment. The case came to this court on exceptions to the overruling of the demurrer and to the refusal of the defendant's motion for a new trial. It will be noted that in the plaintiff's petition it is nowhere alleged that he sold the timber at a price certain, and it is nowhere alleged that he had a purchaser, but he contents himself with the allegation that he could have sold in Europe at the market price. The certainty of the sale is merely conjectural, and the opinion of Manson as to what he might have been able to do were the timber in Europe. The market price of the timber as fixed when it was sold, Manson being under no duty to sell at any specified time, can not be used as the basis of fixing his damages recoverable by law. The damages alleged are too remote and uncertain to be the basis of a recovery. Civil Code (1910), §§ 4394, 4508, 4509; *Montgomery* v. *Alexander Lumber Co.*, 140 *Ga.* 51 (78 S. E. 413). See also *Orr* v. *Farmers Alliance Warehouse Co.*, 97 *Ga.* 241 (4), 243 (22 S. E. 937); *Goodin* v. *Southern Railway Co.*, 125 *Ga.* 630 (54 S. E. 720, 6 L. R. A. (N. S.) 1054, 5 Ann. Cas. 573). The court erred in

overruling the general demurrer. What occurred thereafter in the trial of the case was nugatory.

*Judgment reversed. Wade, C. J., and Jenkins, J., concur.*