### 25148. WESTERN UNION TELEGRAPH COMPANY v. COLEMAN.

DECIDED JULY 16, 1936.

*William L. Clay,* for plaintiff in error.

STEPHENS, J. Moses Coleman sued the Western Union Telegraph Company for damages. In his petition he alleged that immediately before November 6, 1933, he had been in communication with Louis Strauss, a resident of Richmond, Virginia, with reference to the sale by the plaintiff to Strauss of a large quantity of pecan nuts which the plaintiff then owned, and a portion of which he intended purchasing on the open market for resale; that on November 6, Strauss sent to the plaintiff a telegram as follows: "Have an offer for five thousand pounds of Schleys at eighteen cents pound five thousand pounds of Stewarts at sixteen cents kindly let me know by Thursday by mail if accepted let me have a jobbers

price and lowest price in ton lots," that this telegram was an offer to buy for immediate shipment 5000 pounds of Schley pecans at 18 cents per pound and 5000 pounds of Stewart pecans at 16 cents per pound, that the telegram was never delivered to the plaintiff or his authorized agent, that the defendant delivered it to one Holloway, though the plaintiff was well known to the agent and to the messenger boy of the defendant, that in answer to said telegram, on November 7 the defendant transmitted to Strauss a telegram in these words: "Can deliver Thursday Schleys twenty Stuarts sixteen wire," signed Moses Coleman; that neither the plaintiff nor any one authorized to act for him offered said message for transmission; that in answer to the telegram last quoted Strauss, on November 8, wired the plaintiff an order for 2000 pounds of Stewart nuts and 4000 pounds of Schley pecans at 16 and 20 cents respectively; that said order was by telegram directed to the plaintiff at Lyons, Georgia, and read as follows: "Ship A&P Tea Co. two thousand Stuarts and four thousand Schleys Thursday," signed Louis Strauss; that this last telegram was not delivered to the plaintiff or his authorized agent, but was delivered to or received by Holloway; that Holloway, or some unknown person acting by, through, and for him, received the telegram first referred to and transmitted under the plaintiff's name the counter-offer above set out, and received the answer to this telegram; that Holloway and his servants, agents, and employees failed to advise the plaintiff of the contents of the messages aforesaid, and through himself or his agents and employees filled the aforesaid order for pecan nuts; that had the plaintiff received the telegram aforesaid, or had same been duly delivered to his agent, the plaintiff would have made shipment of the nuts ordered by Strauss through said messages, and would have realized a profit of at least $460; and that he could and would have shipped the full 10,000 pounds of nuts referred to in the first message, at a profit much in excess of the $460.

The petition was demurred to on numerous grounds. The plaintiff amended by alleging: "That the aforesaid alleged profit of $380 for which this petitioner prays judgment against defendant would have been realized by reason of the fact that at the time the telegram above referred to was received petitioner could have purchased and would have purchased in the open market at Lyons 2000 pounds of Stewart pecans at and for the sum of 9 cents per

pound, and that at said time petitioner could have purchased and would have purchased in said market 4000 pounds of Schley pecan nuts at 12 cents per pound, and that he, plaintiff, would have realized a profit of seven cents per pound on the 2000 lbs. of Stewart nuts, or a profit of $140, that on the 4000 lbs. of Schley nuts he would have realized a profit of 6 cents per pound, or a profit of $240, a total profit of $380 on the nuts actually shipped by Holloway, or Smith, or other persons acting for them, on the strength of a telegraphic order to this petitioner." The plaintiff amended by alleging the market value of pecans in Lyons to have been 9 cents for Stewarts and 12 cents for Schleys at the time of the sale to Strauss, and that the pecans were sold by Holloway and Smith for 16 cents a pound for Stewarts and 18 cents for Schleys, making a total profit of $380. Another amendment by the plaintiff substituted for the words "or authorized agent" the words "Douglas McCorkle." After these amendments were made, the defendant renewed its demurrers to the petition as amended, some of which were sustained and some overruled. The jury returned a verdict of $332 for the plaintiff. A motion for new trial was overruled. The defendant excepted to the overruling of its demurrers and to the refusal of a new trial. The only grounds of the demurrer to which it is necessary to refer are to the effect that the petition sets forth no cause of action, and that the damages sought to be recovered are speculative, uncertain, and remote and can not be recovered. These grounds were overruled. By the order sustaining various other grounds of demurrer the case was trimmed down to the damages claimed in paragraph 9 of the petition, which alleged that if the plaintiff had received the telegram of November 8 he would have made shipment of the nuts ordered by Strauss through said messages, and would have realized a profit of at least $460, as in the first amendment above set out. The case as finally presented is that if Strauss's telegram of November 8 had been delivered to the plaintiff, he "could have purchased and would have purchased in the open market at Lyons 2000 pounds of Stewart pecans at and for the sum of 9 cents per pound, and could have purchased and would have purchased 4000 pounds of Schley pecans at 12 cents per pound," and would have realized a profit of $380 on the nuts actually shipped by Holloway or Smith on the strength of a telegraphic order to the plaintiff.

Had the two telegrams which were intended for the plaintiff been delivered to him, no contracts would have been thereby created. The two telegrams were no more than offers to purchase pecans from the plaintiff. The first telegram, of November 6, if it can be construed as an offer to purchase, was an offer to purchase 5000 pounds of Schleys and 5000 pounds of Stewarts. There is no indication whatever in the petition that the plaintiff would or could have accepted this offer. It appears from his allegations that he could have purchased and would have purchased in the market 4000 pounds of Schleys and 2000 pounds of Stewarts. It does not appear that he had on hand any Schleys or Stewarts to supply this deficiency. Therefore it does not appear that the failure of the defendant to deliver to the plaintiff the telegram of November 6 prevented him from making an advantageous contract of sale, or caused him to lose any profits which might inhere in any contract which he might have made pursuant to anything in this telegram. Had this telegram been delivered to the plaintiff, there is no assurance that he would have replied in the terms of the faked answer sent in his name; and consequently there is no assurance that the telegram to him of November 8 would have been forthcoming. This telegram directed to the plaintiff, which it is alleged the defendant failed to deliver, and which directed the plaintiff to ship to the A. & P. Tea Company "2000 Stewarts and 4000 Schleys Thursday," may be considered as an offer made by the sender of the telegram to purchase the pecans from the plaintiff. In determining the effect of this telegram it must be considered as if the telegram of November 6 had never been delivered to the plaintiff. Nothing was said in this telegram of November 8 about price. It does not appear anywhere that the plaintiff and the sender of the telegram had had any negotiations respecting the price of the pecans. Something had been said about prices in the telegram of November 7, purporting to have been sent by the plaintiff, but which he repudiated as a forgery. While the telegram of November 8, which directed the plaintiff to ship 2000 Stewarts and 4000 Schleys, but which made no reference to the price, must have been sent on the assumption that the price was the price indicated in the forged telegram, yet, so far as the plaintiff was concerned, nothing was said between him and the sender of the telegram to him of November 8 as to the prices of the pecans ordered by that telegram

to be shipped. Construing the telegram of November 8 to the plaintiff as an offer to buy pecans from him, it does not appear anywhere in his allegations that he would have accepted this offer had the telegram been delivered to him. It is merely alleged, as appears in paragraph 1 of the amendment of April 25, 1934, that an alleged profit to the plaintiff would have been realized, because he "could have purchased and would have purchased in the open market 2000 pounds of Stewart pecans at and for the sum of 9 cents a pound, and that at said time petitioner could have purchased and would have purchased in said market 4000 pounds of Schley pecan nuts at 12 cents a pound," and that he would have realized a profit of 7 cents a pound on the Stewarts and a profit of 6 cents a pound on the Schleys. He alleges his profits on the basis of the prices stated in the faked telegram of November 7. As the telegram of November 8, in which the sender offered to buy pecans of the plaintiff, failed to make any reference to the price, it may reasonably be inferred that the plaintiff would not have accepted this offer had the telegram been delivered to him without further correspondence and negotiations with the sender of the telegram, respecting the price to be paid for the pecans. At that time he would have known nothing of the prices stated in the faked telegram of November 7. Since there is omitted from the petition any allegation that the plaintiff would have accepted this offer, it must be taken, construing the petition most strongly against the plaintiff, that had he received this telegram he would not have accepted the offer without further negotiations. It does not appear that if he had received this telegram he would have accepted the sender's offer and entered into a contract.

It appears from the testimony of the plaintiff that when the telegrams of November 6 and November 8, which he did not receive, were delivered at Lyons, Georgia, he was away from home; that he did not know whether at the time he could have found any way to haul to Richmond the pecans ordered in the telegram of November 8; that a man by the name of McCorkle was working for the plaintiff at the time and attended to the business that plaintiff "needed attending to;" that if the telegram had been delivered to McCorkle, "he was the only one that could have looked after it;" and that if McCorkle "had an order for pecans at prices that would show a profit he would have bought them and sold them,

that was for him to decide in my absence, that was for his decision." While the person who received the telegram of November 6, in the plaintiff's absence, testified that he exhibited it to McCorkle, who read the telegram and stated that he could not fill the order, McCorkle testified that he did not see the telegram, but that this witness told him he had an order for pecans, and wanted to know if McCorkle wanted to send any with the order, and McCorkle stated that he did not; that McCorkle did not know whether or not he had enough pecans to fill the order, and did not think it was wise to go out and buy pecans at that time; that he had another order for pecans, which was a local order; and that he did not think it wise to accept any foreign order. While, of course, this evidence can not be read into the petition for the purpose of passing on the demurrer, the facts testified to are illustrative of the soundness of the proposition that a mere allegation in the petition that the plaintiff could have bought pecans and would have bought pecans to fill the order had the plaintiff received the telegram containing the order is insufficient to show that had the plaintiff or his agent, McCorkle, received the telegram the order would have been accepted, or could have or would have been complied with by the shipment and delivery of the pecans ordered. Therefore it does not appear that the plaintiff suffered a loss of profits inhering in an unexecuted contract by a failure of the telegraph company to deliver either or both of the telegrams. Therefore damages for lost profits are too uncertain and remote to be the basis of a recovery against the telegraph company for a failure to deliver the telegram. In *Bashinsky* v. *Western Union Telegraph Co.*, 1 *Ga. App.* 761 (58 S. E. 91), where a plaintiff sought to recover against a telegraph company for lost profits under a contract which the plaintiff was prevented from making by reason of a failure of the defendant to deliver a telegram it was stated: "It is nowhere distinctly alleged that the plaintiffs had a contract with the sender of the message. On the contrary, from the distinct averment in the fourth paragraph of the petition, that they 'would have been able to have made the contract,' etc., it can only be inferred that they did not have such a contract as would have bound the sender of the message. They lost nothing but a chance to make something."

In *Western Union Telegraph Co.* v. *Manson*, 21 *Ga. App.* 737 (94 S. E. 1033), the plaintiff alleged that by reason of the de-

fendant's failure to deliver a cablegram he lost a contract for the use of a vessel in which to transport his timber to a port in Great Britain or on the continent of Europe, and on account of which he had to procure another vessel which caused a delay of one month and eleven days in the shipment of the timber, during which time the market value of the timber rapidly declined; that he sold the timber as quickly as possible and for the best price obtainable, sustaining a loss of $2287.67 on account of the decline in the market; and that "timber for shipment not later than April loading" was bringing a certain price at any port in Great Britain and the continent of Europe. The defendant demurred generally to the petition, and insisted that the damages alleged to have been sustained were too remote, uncertain, and speculative to form the basis of a legal cause of action. The demurrer was overruled, and this court reversed that judgment, saying "It will be noted that in the plaintiff's petition it is nowhere alleged that he sold the timber at a price certain, and it is nowhere alleged that he had a purchaser, but he contents himself with the allegation that he could have sold in Europe at the market price. The certainty of the sale is merely conjectural, and the opinion of Manson as to what he might have been able to do were the timber in Europe." In the case at bar the plaintiff alleges that he could and would have bought in the open market at Lyons, Georgia, a sufficient quantity of pecans to fill the order contained in Strauss's telegram of November 8. This plainly implies that he did not then own enough pecans to fill the order, and he bases his right to recover on the alleged possibility of buying up pecans for the purpose of filling the order. The principle decided in *Western Union Telegraph Co.* v. *Manson,* supra, applies to this case, notwithstanding some difference in the facts. In *Richmond Hosiery Mills* v. *Western Union Telegraph Co.,* 123 *Ga.* 216 (51 S. E. 290), the Supreme Court said: "So in the present case, treating the contract as not completed, the contention is that an offer as received by the plaintiff was for December delivery, and that if it had been for October delivery it would have been accepted. There is little doubt that the plaintiff, or its vice-president, thinks now that it would have accepted the offer; but it is exceedingly speculative, as a basis for damages, to say that if an offer had been received the plaintiff would have accepted it, and would have derived certain advantages from it." In *Western*

*Union Telegraph Co.* v. *Fatman,* 73 *Ga.* 285 (54 Am. R. 877), it appeared affirmatively that the failure of the telegraph company to deliver a telegram caused the plaintiff to lose a contract. It was there held that the damages sued for were not too remote or speculative.

In view of these rulings it must be held that the court erred in overruling the general demurrer. All subsequent proceedings being nugatory, it is not necessary to consider them.

*Judgment reversed. Jenkins, P. J., concurs. Sutton, J., dissents.*

SUTTON, J., dissenting. The plaintiff, a pecan commission broker, brought suit for damages against the Western Union Telegraph Company because of the failure of the defendant to deliver two telegraphic messages addressed to him at Lyons, Georgia, which messages the defendant delivered to some other person not authorized by plaintiff to receive or reply to the same. Plaintiff alleged that he had been in communication with a pecan buyer or broker in Virginia relatively to shipping pecans; that on November 6, 1933, this broker delivered to the defendant a collect telegram plainly directed to plaintiff at Lyons, as follows: "Have an offer for five thousand pounds of Schleys at eighteen cents pound five thousand pounds of Stewarts at sixteen cents kindly let me know by Thursday by mail if accepted let me have jobber's price and lowest price in ton lots;" that this telegram was not delivered to plaintiff, although he was well known to the local agents of defendant, but was delivered to some other person; that had plaintiff received this telegram he could and would have shipped the entire ten thousand pounds of nuts at the price quoted by the sender; that the person to whom the defendant wrongfully delivered said telegram replied thereto under plaintiff's signature, which was not authorized by the plaintiff, as follows: "Can deliver Thursday Schleys twenty Stewarts sixteen wire;" that in answer to this wire purporting to be from plaintiff, said buyer in Virginia replied by telegram directed to the plaintiff, which was not delivered to plaintiff but to said other person who received the first message, as follows: "Ship A&P Co. two thousand Stewarts and four thousand Schleys Thursday;" that had the plaintiff received this message he could and would have purchased on the open market the Stewarts at 9 cents per pound and the Schleys at 12 cents per pound, and

would have shipped the same in accordance with said order; and that he could and would have made a profit of 8 cents per pound on the Schleys amounting to $320, and of 7 cents per pound on the Stewarts amounting to $140, making a total of $460, if said telegrams had been delivered to him by the defendant. These profits were not speculative but were certain and definite; and under the allegations of plaintiff's petition he could and would have made a profit on the pecans as claimed if the telegrams had been delivered to him. This being true, the loss thereof by reason of defendant's alleged wrongful acts in delivering the messages to some one other than plaintiff, when its agents at the point of delivery were well acquainted with plaintiff, would not constitute damages too remote to be recovered. Under the principles of law laid down in *Western Union Telegraph Co.* v. *Fatman,* 73 *Ga.* 285(4) (supra), and *Walker* v. *Jenkins,* 32 *Ga. App.* 238, 242 (123 S. E. 161), et seq., I think the plaintiff was entitled to recover under the allegations of his petition. For this reason I dissent from the opinion of the majority in this case.